## SHELL PETROLEUM CORP. et al. v. MOORE et al.

No. 21464. Opinion Filed Feb. 24, 1931.

A. J. Follens and Clayton B. Pierce, for petitioners.

Leo J. Williams, M. J. Parmenter, and J. Berry King, Atty. Gen., for respondents.

CLARK, V. C. J. This is an original action in this court by petitioners to review an award of the State Industrial Commission, made and entered on the 22d day of May, 1930, in favor of Gable Moore, respondent herein. The Industrial Commission found: First, that respondent Moore received an accidental personal injury arising out of and in the course of his employment, while engaged in a hazardous occupation within the meaning of the statute (Comp. St. 1921, sec. 7284, as amended by Laws 1923, c. 61, sec.

2), on the 18th day of October, 1929. Second, that respondent's wage at the time of his injury was $4.50 per day, seven days a week. That petitioners had proper notice of the accident and injury, and that respondent filed a notice and claim for compensation within the statutory period. Third, that as a result of the aforesaid accidental injury, the respondent has been temporarily totally disabled since the date of the accident, and was disabled on the date of the trial. Fourth, that petitioners paid respondent compensation at the rate of $18 per week from the date of injury less the five-day waiting period, up to and including January 29, 1930. Fifth, that respondent is entitled to compensation from the date of last payment up to the present date (date of trial), and that compensation should continue at the rate of $18 per week until the termination of claimant's disability or until otherwise ordered by the Commission.

It is this order and award which petitioners seek to review. The first contention being that the order and judgment of the Commission is contrary to law. Second, that the order and judgment entered in the above-entitled cause is not supported by the evidence. Third, that the Commission erred in rendering said purported judgment or order on May 22, 1930, for the reason that the evidence in the case shows that the respondent had fully recovered from any disability that he suffered as a result of said injury on or about December 30, 1929, and that any disability the claimant suffered from and after that date was the result of arthritis, which is a disease, and not an accident, and that there was an intervening cause in connection with said accident which caused said arthritic condition to be excited and that any disability suffered by the claimant from and after December 30, 1929, was not the result of an injury, and the order of the Commission, entering a continuing award, is not supported by the evidence and is a conclusion of law.

Considering the three contentions of petitioners together, their contention is, briefly stated, that the evidence was insufficient to show or prove that claimant, after December 30, 1929, was suffering any disability as a result of the injury, and the disability now suffered by claimant, which is admitted, was the result of arthritis, which is a disease and not compensable under the Compensation Law of Oklahoma.

An examination of the record will disclose that respondent has worked in the oil fields for several years, that he was an able-bodied man and performed the usual oil field work, and that he worked for one company eight years and was working for the Shell Petroleum Company as, what might be termed, a common laborer on the date of his accidental injury.

The record discloses that claimant was shoveling dirt and was in a stooping position, and while so employed a piece of lumber eight inches by ten inches and twelve feet long fell approximately eight feet, striking the respondent between the shoulders and on the back, crushing him to the ground; that he was unconscious for ten or fifteen minutes.

After he regained consciousness, he was given medical attention, and later brought to Oklahoma City and placed in a hospital. Petitioners contend that on December 16, 1929, the respondent was able to return to work. If the respondent was able to return to work, then the disability caused by the injury had ceased. Dr. Roundtree testified that he examined respondent on December 16, 1929, at St. Anthony's Hospital; Dr. Shuler was present at the time, and that respondent stated that the pain in his back had entirely disappeared; that he told them he was feeling entirely well and had no pain; that he voluntarily lifted up the foot of the bed off the floor five or six inches to show he was all right, and that his back didn't hurt.

On cross-examination, Dr. Roundtree further testified:

"Q. You won't say that he was not still suffering from injury received in October? A. I don't think he was."

Dr. Shuler testified as follows:

"Q. Is arthritis ever produced by an injury, A. It is not generally that it is. Q. From your examination of the plates, they show this man had considerable arthritis? A. Yes, sir; he has a marked arthritis, higher than usually found—comes up to the cervicle vertebrae."

He further testified that a man suffering from arthritis, the symptoms must be noted some time—there is a breaking point some time in the course of the disease.

All this testimony of the two expert witnesses called by petitioners was given on the assumption that respondent had on December 16, 1929, entirely recovered from the injury received. Respondent denied the statement of the doctors that he stated he was well, but testified that he stated to them that he felt better, but still had pain in his back in the region where the heavy

timber fell upon him. He also denied lifting the bed as stated by one of the expert witnesses.

He further testified that upon leaving the hospital and going home he was unable to perform any labor, and was still disabled and suffered great pain and inconvenience from the condition of his back. None of the expert witnesses who testified at the hearing contended that the respondent was not disabled on that date or contended that the disability was of a recent date. A peculiar thing about the testimony of the two experts, testifying for petitioners, was that respondent was entirely well on December 16, 1929, and that the respondent's disability, at the time of the hearing, was the result of the disease which had developed long prior to the date of the injury.

This testimony was before the Industrial Commission for consideration, which had a right to weigh the same and give it such weight and value as in their judgment should be accorded the same.

The respondent testified: "Since I came home I have been no good at all," meaning after he came home from the hospital. He further testified: "Just walking—my leg and back hurt and the pain hurts me where the timber hit me."

Dr. Margo testified that a man with osteo-arthritis will have pain when there is motion of the bone. Dr. Roundtree testified that there will be days when he feels good and days when he feels bad, and that the weather seems to influence the cases in a way we do not understand. Respondent was called to the stand the second time and testified as follows:

"Q. Mr. Moore, did you feel that you were able to return to work when you left St. Anthony's Hospital? A. No. I did not. Q. Did you tell any one out there you were able to work? A. No. Q. Could you bend over and use your back as you could before the injury you received on October 18th? A. No, sir. Q. Did you lift any bed at St. Anthony Hospital? A. No, sir. Q. Do you feel you are able to work now? A. No, I don't. I have that hurting all the time just as I stated before, where the timber hit me—will have every time I breathe. I can feel it and I don't think it ever will be any better. Q. Can you tell where it hit you? A. Right between my shoulders, and I stooped over to get a shovel of dirt it hit me. The man released the load and the timber fell on my back when I was stooping over and went to raise up with a shovel of dirt and I didn't know anything for a while, and the first I knew I was kicking around for my breath and they tried to get the timber off me."

He further testified he had not suffered from rheumatism or throat trouble and had never had any pain in his back prior to the date of the accident; and that he had not beeen entirely free from pain and discomfort since that time. The testimony of all the expert witnesses was to the effect that the accident caused the disability of respondent. However, petitioners' witnesses contend that the disability resulting from the accident ceased on December 16, 1929, and that the continued disability was caused from osteo-arthritis. The testimony of respondent was to the effect that the pain and injury caused by the striking of his back by this heavy timber had never ceased, and that at the date of trial he was still temporarily totally disabled. Several authorities are cited in petitioners' brief supporting the contention presented that the continued disability was not the result of the accident.

This court has held in a number of cases that where respondent had some disease which did not disable him or prevent him from performing labor, an injury which accelerated the disease was compensable. It is true that the testimony in this case indicates that at some time in the future the respondent may be disabled from osteo-arthritis. However, no date is fixed, and in the absence of the accident, the respondent may have been able to work for a number of years.

The Supreme Court of Pennsylvania in Guyer v. Equitable Gas Co., 123 Atl. 590, in the fifth paragraph of the syllabus, said:

"Death from fall rupturing blood vessels, which in turn caused rupture of cyst (a diseased condition of the pancreas), is compensable, though such diseased condition might ultimately have caused death."

The Supreme Court of Utah in the case of Utah-Idaho Central R. Co. et al. v. Industrial Commission of Utah, 267 Pac. 785, in the third paragraph of the syllabus, said:

"In case a latent disease or trouble is accelerated or lighted up by an industrial accident, and a more serious injury results by reason of the fact of the existence of such latent ailment than otherwise would have resulted, employee is entitled to additional compensation."

The Supreme Court of Illinois in Sunnyside Mining Co. v. Industrial Commission, 151 N. E. 238, in the third paragraph of the syllabus, held:

"Evidence held to show that employee's injury aggravated condition of spine already

affected by arthritis, entitling him to compensation for permanent partial disability."

In the case of Warlop v. Western Coal & Mining Co., the Circuit Court of Appeals, Eighth Circuit, 24 Fed. (2d) 926, in the fourth syllabus, said:

"Where coal miner, having a pre-existing arthritic condition of the lower portion of his back which at some uncertain and undetermined time in the future might cause him to become totally incapacitated, was injured by a heavy rock falling upon him, resulting in immediate total and permanent disability, held, that he was entitled to full compensation for permanent and total disability as prescribed by the Kansas Workmen's Compensation Act."

At page 930 of the above-cited case, the court said:

"It does not appear in this case that, even had the accident not occurred, the disability would, at some certain time within the 8-year limit of the statute, have resulted from any disease. Certainly the disease did not produce the disability of appellant. Did the accident, or was it a combination of the two? The arbitrator and the court found the latter. There are probably lurking germs of disease in nearly all human mortals. Some accident may accelerate the disease and produce complete disability, but, if the disease would not have developed without the accidental injury, that must be regarded as the contributory proximate cause. Workmen's Compensation Acts are not limited in their benefits to perfectly healthy employees. An interesting comment on this phase of the matter is that in Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1818F, 862:

"'The proof goes no further, in support of the defense of this suit than to show that the plaintiff might, and perhaps would, at some time, have been disabled by the disease that was lurking in his system, even if the accident complained of had not happened. And that is not much more of a defense than to say that every man must some day come to the end of his worldly career, accident or no accident.'"

The courts very generally hold that if an existing disease is aggravated by accident or injury compensation must be paid for the resulting incapacity.

In Blackburn v. Coffeyville Vitrified Brick & Tile Co., 107 Kan. 722, 193 Pac. 351, the court held that the trial court's instructions to the jury that plaintiff could not recover for an aggravation for any disease that he had prior to receiving injury was error, and the court cites with approval a number of leading cases on the subject.

In the case at bar the evidence shows that respondent on the date of the accident was employed as a laborer, and had for many years prior thereto been so employed; that he had had no previous trouble or disease that had incapacitated him in any way from performing manual labor. It is true he may have had some latent disease, but it certainly did not produce disability of respondent. There is but one reasonable conclusion that the Commission could reach from the evidence in this case, and that was that the accident caused the disability.

The record shows the accident and the immediate resulting disability, and the finding of the Industrial Commission that said continuing disability was the result of the accident is supported by competent evidence and will not be disturbed by this court on review. It is true, under our Compensation Laws, a workman may not recover compensation for incapacity resulting merely from a disease, although the disease developed in and was caused by the nature and condition of his employment. It is only where he has sustained some accidental injury arising out of and in the course of his employment which aggravates the disease and causes disability that he may recover compensation. The testimony of the expert witnesses that respondent had recovered was based on the statement alleged to have been made by respondent to the doctors that he was entirely well and able to go to work. Petitioners offer evidence of a statement from respondent that he was able to work, which statement was denied by respondent, and then insist that he was not competent to testify that he was unable to work.

The Industrial Commission had before it all the facts and circumstances, and from such facts and circumstances reached the conclusion that respondent was temporarily totally disabled. Such finding and judgment is supported by competent evidence and will not be disturbed by this court on review.

Judgment and award of the Industrial Commission is affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.

Note.—See under (2) anno. L. R. A. 1916A, 137; L. R. A. 1917D, 110, 129; L. R. A. 1918F. 869; 19 A. L. R. 95; 28 A. L. R. 204; 60 A. L. R. 1299; 28 R. C. L. p. 816; R. C. L. Perm. Supp. p. 6240; R. C. L. Continuing Perm. Supp. p. 1208.