SINCLAIR PRAIRIE OIL CO. v. STEVENS et al.

No. 31365. April 18, 1944.

*148 P. 2d 176.*

Pierce & Rucker, of Oklahoma City, and Edward H. Chandler, of Tulsa, for petitioner.

Andrew Fraley, of Oklahoma City, O. B. Martin, of Blackwell, and Randell S. Cobb, Atty. Gen., for respondents.

DAVISON, J. This is an original proceeding instituted in this court to obtain a review of an order of the State Indus-

trial Commission entered on March 13, 1943, awarding to Sidney A. Stevens, as claimant, compensation for temporary total and permanent partial disability, found by the commission to have resulted from an accidental personal injury sustained by the claimant on February 20, 1940.

On and prior to February 20, 1940, the claimant was employed as a pumper for the Sinclair Prairie Oil Company, hereinafter referred to as the company, at Shidler in Osage county, Okla. He had been an employee of the company for about 18 years.

The claimant was on the date mentioned suffering from Buerger's disease (a disorder of the circulatory system sometimes resulting in a gangrenous condition and disability of a serious character).

Since February 20, 1940, the claimant has been disabled and has not worked. In June of 1940, claimant's left foot was amputated as a result of the disorder above mentioned.

Since 1936 the company has maintained and operated a plan described by it as a "sick and gratuity plan," designed to provide benefits to employees compelled to be absent from work by sickness, or other necessary causes not connected with accidental injuries sustained by the employee arising out of and in the course of employment. In other words, the plan was not designed or described by the company as one to comprehend the payment of compensation for disability resulting from accidental personal injuries compensable under the Workmen's Compensation Act. Of course, the company could use the plan for the latter purpose if it chose to violate its own rules.

Beginning with the date on which the claimant ceased work, and continuing thereafter until November 30, 1940, he was paid in connection with the above mentioned plan. The payments averaged approximately $70 per month, the equivalent or slightly less than $18 per week, until the three months preceding November 30th, when the payments were reduced to about one-half the amount indicated above.

The various payments made by the company under its "sick and gratuity plan" were identified as such as each separate payment was made. The claimant upon receipt of each such payment executed a receipt on printed form prepared by the company. These form receipts stated that the money paid "constituted benefits under the company's sick and gratuity plan" and were for absence from duty "not occasioned by any injury received in the course of . . . employment." On this point claimant testified in substance that he considered them as compensation for disability attributable to personal injury by reason of statements made to him by representatives of the company.

On October 11, 1941, within one year after the cessation of payments by the company under its "sick and gratuity plan" but more than one year after the claimant ceased actual work on February 20, 1940, the claimant filed with the State Industrial Commission his claim for compensation under the Workmen's Compensation Act.

Claimant asserted the occurrence on February 20, 1940, of an accidental personal injury sustained in the course of and arising out of his employment.

On subsequent hearing of the cause before the Industrial Commission, claimant's sworn testimony was that on the date stated and while on duty as an employee of the company he was starting or attempting to start a stationary gas engine, using his foot on the spoke of the wheel to turn the engine over or, as he said, "roll it." That he released or started to release the engine to get a "new hold" when it fired and hit his left foot behind the little toe causing him to feel as though his leg were paralyzed.

The claimant testified that late on the day of its occurrence he reported the accident to Mr. John Stoker, who was the company's district superintendent in charge of the Shidler district.

The testimony of Mr. Stoker on this point was in substance that he was advised by claimant that the claimant was experiencing difficulty with his foot, but that he was never advised of any accident or accidental injury.

It was claimant's theory in the presentation of this case that the accident of February 20, 1940, aggravated the pre-existing disorder (Buerger's disease), thus creating a condition resulting in the amputation of his foot, and also causing the disability which has prevented him from working since February 20, 1940. There is ample medical testimony in the record to support this view.

There is also evidence in the record indicating that Buerger's disease is seldom attended by such a disastrous consequence as claimant sustained in the absence of a "blow" of some kind.

Under our law, when an accidental injury received in an occupation within the Workmen's Compensation Act aggravates a pre-existing physical condition or disorder into a state of disability, the injured workman may be awarded workmen's compensation for such disability. Nease v. Hughes Stone Co. et al., 114 Okla. 170, 244 P. 778; Northwestern Refining Co. v. State Industrial Commission, 145 Okla. 72, 291 P. 533; Employees' Liability Assurance Corp. v. Coffman, 147 Okla. 227, 296 P. 395; Shell Petroleum Corp. v. Moore, 147 Okla. 243, 296 P. 390; Protho v. Nette, 173 Okla. 114, 46 P. 2d 942.

In presenting this cause to us for review the company first asserts that "no accidental injury was sustained." This is an assertion of fact directly contrary to the sworn testimony of claimant as inferentially corroborated by that portion of the medical testimony indicating that Buerger's disease would be unlikely to result as it did in this case unless claimant received a blow of some character.

The company points out that the evidence of claimant on this point is contradicted in many particulars and by the inferences to be drawn from many circumstances. It urges that we should weigh the conflicting evidence and formulate our own independent finding and judgment and that we should determine upon consideration of the weight of the evidence that no accidental injury was sustained by the claimant. Petitioner's theory is that the question of whether claimant sustained an accidental injury is a jurisdictional as distinguished from a nonjurisdictional question of fact. Petitioner is correct in pointing out that we review these two types of questions of fact in a different manner.

Our statute (85 O. S. 1941 § 26) makes the decision of the State Industrial Commission "final as to all questions of fact." Thus, generally speaking, such findings require only the existence of proof reasonably tending to support them in order to meet our approval on review. However, since the State Industrial Commission is an administrative board as distinguished from a court, it was decided by this court in McKeever Drilling Co. v. Egbert, 170 Okla. 259, 40 P. 2d 32, upon authority of the decision of the Supreme Court of the United States in Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598, that on review we should not accept as conclusive the findings of the State Industrial Commission on jurisdictional questions of fact but should weigh the evidence and make our own independent findings with relation thereto.

Our decision on that point was based upon consideration of the "due process" clause of the Federal Constitution and our State Constitution (art. 2, sec. 7), and operated to deprive the findings of the State Industrial Commission of their conclusive character, only to the extent demanded by constitutional requirements.

The doctrine of McKeever Drilling Co. v. Egbert, supra, declaring the method in which we review a jurisdictional question of fact has been closely followed in the subsequent decisions of this court; however, we have reconsidered the question of whether the de-

termination of the fact that a claimant sustained or did not sustain an accidental injury arising out of and in the course of employment is jurisdictional. In LeFlore-Poteau Coal Co. v. Thurston, 184 Okla. 178, 86 P. 2d 284, we reapproved and reiterated the rule that:

"The question of whether an injury arose out of and in the course of employment is one of fact to be determined by the Industrial Commission under the circumstances of each particular case, and, where there is any testimony reasonably tending to support its finding, it will not be disturbed on an application to vacate the award."

In that case we considered the doctrine of McKeever Drilling Co. v. Egbert, supra, and held it inapplicable to the question involved.

Subsequently, in Prairie Cotton Oil Co. v. State Industrial Commission, 187 Okla. 378, 102 P. 2d 944, we again considered the doctrine of McKeever Drilling Co. v. Egbert, supra, and held that it did not authorize us to weigh the evidence on the disputed question of whether an accident or accidental injury did or did not occur.

In this case, since there is evidence supporting the finding of the commission that an accidental injury was sustained, the finding of the commission on that point should not be disturbed. The question is nonjurisdictional. Upon authority of LeFlore-Poteau Coal Co. v. Thurston, supra, and Prairie Cotton Oil Co. v. State Industrial Commission, supra, we cannot, as petitioner requests, weigh the evidence and make an independent finding thereon absolving the company from liability.

The next contention of the company is that the claim for compensation is barred under the provisions of 85 O. S. 1941 § 43, the first grammatical paragraph of which reads:

"The right to claim compensation under this Act shall be forever barred unless within one year after the injury a claim for compensation thereunder shall be filed with the commission. Provided, however, *claims may be filed at* *any time within one year from the date of last payment of any compensation or remuneration paid in lieu of compensation.*" (Emphasis ours.)

Under the proviso of the foregoing statutory provision, claimant's failure to file his claim within one year after the date of the injury is excusable, if the payments made to him by the company under its "sick and gratuity plan" constituted either "compensation or remuneration paid in lieu of compensation."

In this connection it must be remembered that the name given the payments is not of controlling importance. It is the actual character of the payments which determines the rights of the parties.

This court has frequently been confronted with cases in which the payments made by the employer to an injured employee as compensation or remuneration paid in lieu of compensation were called "wages." We have repeatedly held in such cases that the name given the payments does not present a determination that the "wages" were in reality compensation or remuneration in lieu of compensation. Oklahoma Natural Gas Co. v. White, 187 Okla. 627, 105 P. 2d 225.

Reason and logic would be grievously offended if a different result should be announced merely because payments made as "compensation or remuneration in lieu of compensation" were called "sick and gratuity" payments. In fact, in Bassett v. Magnolia Petroleum Co., 190 Okla. 480, 124 P. 2d 984, we had before us a situation in which the payments were so denominated. We therein held that the question of whether the payments so denominated were in reality compensation or remuneration in lieu of compensation was one of fact for the determination of the commission. We therein applied the rule announced in cases dealing with payments made as "remuneration in lieu of compensation" and called "wages." In that case the State Industrial Commission found as a matter of fact that the pay-

ments were "sick benefits" rather than compensation. We determined the existence of evidence in support of the finding and approved it.

Thus when there is conflicting evidence or different inferences can be drawn from the evidence, the question of whether the payments called "wages" or "sick benefits" were in reality payments of "compensation or remuneration paid in lieu of compensation" becomes one of fact. The finding of the commission on the point should be approved in this court if the record reflects evidence reasonably tending to support it. Oklahoma Natural Gas. Co. v. White, supra, and Bassett v. Magnolia Petroleum Co., supra. The question is nonjurisdictional.

It is also urged in substance by the company that the recitation of fact and acknowledgment of the purpose of payments contained in each of the receipts signed by the claimant were and are of controlling importance and should be decisive of the issue. To so hold would in effect approve a means of enabling employers to obtain in an indirect manner written waivers by employees of the benefits of the Compensation Act, and would also make an agreement as to the facts between an employer and an injured employee binding upon the employee without the approval of the State Industrial Commission. Such a holding would be contrary to the policy of our act. 85 O. S. 1941 § 47 and § 26, Id. Humble Oil & Refining Co. v. Phelps, 166 Okla. 55, 26 P. 2d 207. The receipts cannot therefore be treated as waivers or binding agreements as to the facts nor can they be indirectly so treated by making them conclusive as evidence on a disputed question of fact.

The evidence and position of the claimant, insofar as tenable on this point, is in substance that, notwithstanding the form in which the payments were made, he received them as and believed them to be compensation for the disability created by the accidental injury, and that they were made by the company with the knowlege imputed to it through its district superintendent that he had sustained an accidental personal injury in the course of his employment, from which the intent on the part of the company to make the payments as compensation or remuneration in lieu of compensation may properly be inferred. That the existence of such an intent on the part of the company was also evidenced by the declarations of its agent in delivering the checks to him. That he paid little or no attention to the forms.

Apparently, however, the claimant also entertained the view, which met with the approval of the State Industrial Commission, that if the payments were made for "temporary disability," which was later determined to have been due to accidental personal injury, such payments constituted "compensation" even though the company at the time the payments were made actually believed and was justified in believing in good faith that claimant's disability had no connection with any accidental injury, and that it was paying purely "sick benefits" for which there was no possibility that a claim might arise under the Workmen's Compensation Act.

This view is untenable, yet it appears to have been the theory upon which the State Industrial Commission decided the issue. The finding of the commission on the point was:

"That claimant's claim is not barred by the statute of limitations for the reason that within one year prior to the time claimant's claim was filed, *he was paid compensation for the temporary disability* the commission finds was due to the injury." (Emphasis ours.)

The word "compensation," as used in 85 O. S. 1941 § 43, supra, has a limited meaning by virtue of subsection 6 of section 3, Id., which reads:

" 'Compensation' means the money allowance payable to an employee as provided for in this act."

And the words, "as provided for in this act," are in themselves further explained by noting that the compensation provided for in the act is by section 11, **Id.:**

". . . for the disability . . . resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, . . ."

Thus, to determine accurately the meaning of the proviso contained in section 43, supra, we interpolate from sections 3 and 11. When so amplified the proviso reads:

". . . Provided, however, claims may be filed at any time within one year from the date of the last payment of any money allowance payable to an employee (sec. 6) for disability resulting from an accidental personal injury (sec. 11) or remuneration paid in lieu of money allowance payable to an employee for disability resulting from an accidental personal injury."

The point is that the payment of the money allowance must have been for disability arising from accidental personal injury, as in this case, distinguished from disability arising from sickness. It is the real purpose of the payment, as distinguished from the name given it, which controls. On this point the knowledge (actual or imputed) and the intent (proven or inferable) of the employer are important factors.

Upon a similar question it was said by the Kansas court, in Pittman v. Glencliff Dairy Products Co., 154 Kan. 516, 119 P. 2d 470, in paragraph 4 of the syllabus by the court:

"The payment of wages to an employee, following injury, cannot be regarded as payment of compensation which fixes the time when the statutory period for filing claims begins under section 44-520a, unless the facts and circumstances, shown by substantial evidence, are such that it can reasonably be said that the employer was aware, or should have been aware, that such wages or part thereof, constituted payments of compensation."

See, also, Hunt v. Industrial Accident Commission of California, 43 Cal. App. 373, 185 P. 215, and Bryant v. State Industrial Commission, 191 Okla. 14, 126 P. 2d 716.

It is important in a case of this character that the issue of fact involved be carefully tried and accurately decided by the fact-finding body and that the facts be judged in the light of the proper rules of law. Our function is to pronounce the governing rules and principles. When those principles are applied, upon consideration of conflicting evidence we are not authorized to disturb the finding. But when it affirmatively appears from the record that the governing principles were not applied, it is our duty to direct a reconsideration. It is only by careful decisions upon this question of fact that generous employers desiring in good faith to provide benefits for sickness as distinguished from accidental injuries can be protected from undue added legal hazards, and that employees can be protected against unscrupulous employers who might be disposed to use this type of plan to defeat the purposes of the Workmen's Compensation Law.

The finding of the commission in this case was such as to impel a conclusion that the point was decided upon the theory that the company's payments of temporary disability benefits excused delay in filing the claim even though the company was not aware or should not have been aware of the accidental injury at the time the payments were made, and believed it was paying purely "sick benefits."

The statutory meaning of the word "compensation" was not the sense in which the commission used the word, as is apparent from the qualifying and defining language which follows the word in the order.

Since it appears that the commission in deciding the question of fact did not give proper consideration to the controlling principles of law, the order and award is vacated and the cause remanded to the commission for reconsideration.

CORN, C.J., and RILEY, OSBORN, BAYLESS, WELCH, and HURST, JJ., concur. GIBSON, V.C.J., dissents to

paragraph 4 of the syllabus; otherwise he concurs.

---

ARNOLD, J. (concurring specially). I am of the opinion that the record herein discloses conclusively that the payments made to the employee were sick benefit payments. If this is true, the finding of the Industrial Commission that the payments were in lieu of compensation was erroneous. In my judgment the commission should have determined whether the statute of limitations was tolled by reason of the conduct and representations of the employer or its insurance carrier relative to the payments made. If such conduct and representations were sufficient to reasonably lull the claimant into a false sense of security, and by reason thereof he failed to file his claim within the statutory time prescribed, his failure would be justified and the statute would be tolled.