SINCLAIR PRAIRIE OIL CO.
v. STEVENS et al.

No. 33499. Sept. 20, 1949.
Rehearing Denied Nov. 8, 1949.

*211 P. 2d 286.*

182

Clayton B. Pierce, of Oklahoma City, and Ralph W. Garrett, of Tulsa, for petitioner.

Dudley & Stamper, of Antlers, Andrew Fraley and O. B. Martin, both of Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

O'NEAL, J. This is the second proceeding brought to review the award entered by the State Industrial Commission in this case. The first proceeding is Sinclair Prairie Oil Co. v. Stevens, 194 Okla. 109, 148 P. 2d 176, and the opinion therein contains a full and complete statement of all the facts and issues presented in the original proceeding and the nature and extent of review in the second proceeding. Reference is made to that opinion for a full development of the case.

The claim is founded upon a statement that on February 20, 1940, while starting a gas engine a wheel struck the toe of claimant's left foot which aggravated a diseased condition known as Buerger's disease, leading to the amputation of the leg. The defense was that since no claim was filed until October 11, 1941, it was barred by 85 O.S. 1941 §43.

In the original proceeding and the review thereof by the Supreme Court, it is stated:

"In determining whether payments made by an employer to an employee constitute compensation (a money allowance payable to an employee for disability resulting from accidental personal injury sustained by the employee arising out of and in the course of the employment, 85 O.S. 1941 §3, subs. 6, and section 11) or remuneration in lieu of such compensation, the knowledge of the employer actual or imputed as of the time of payment with respect to the accidental personal injury and his intent as established or reasonably inferable in making such payments must be taken into consideration."

The cause was remanded to the State Industrial Commission for further proceedings in connection with the directions in the above statement.

In the opinion, the court stated:

". . . It is only by careful decisions upon this question of fact that generous employers desiring in good faith to provide benefits for sickness as distinguished from accidental injuries can be protected from undue added legal hazards, and that employees can be protected against unscrupulous employers who might be disposed to use this type of plan to defeat the purposes of the Workmen's Compensation Law.

"The finding of the commission in this case was such as to impel a conclusion that the point was decided upon the theory that the company's payments of temporary disability benefits excused delay in filing the claim even though the company was not aware or should not have been aware of the accidental injury at the time the payments were made, and believed it was paying purely 'sick benefits.' "

On the retrial it was the position of claimant that there was no need to examine any further witnesses or to take any further testimony, but the review of the question presented as to whether or not the payments were made within the knowledge of the petitioner, as suggested in the above quotations, was to be determined wholly from the record. It was the position of petitioner that further testimony should be taken in order to determine the question of whether the petitioner had made the payments in lieu of com-

pensation or as contended by the petitioner as payment for sick benefits under the sick benefit plan in operation by the petitioner. The trial commissioner adopted the theory of petitioner and for this purpose two witnesses were examined. Henry W. Boggess stated that he was in charge of the payments for sick benefits used by the petitioner; that his office and his department had no information that claimant had sustained an accidental injury resulting in any disability. R. L. Ziegler stated that he was in charge of the department of petitioner known as the Workmen's Compensation Department; that it was his duty to classify and pay all claims arising by reason of disability resulting from accidental injury; that he was never advised of any accidental injury resulting in disability in connection with claimant. Claimant's wife testified that at least on two different occasions she had signed the receipts for the money paid by petitioner to the claimant, and that on these occasions the bearer of the checks had stated that these checks were to pay compensation.

It will be noted that there was a specific direction for the State Industrial Commission to find whether or not the payments were made to the claimant with the knowledge that there had been an accidental injury and a resulting disability. There is a finding in the award sufficient to meet the requirements set out in the former opinion on this issue, and the question here presented is whether the finding is sustained by the evidence.

The evidence of the witness Boggess is sufficient to establish that the department operating the sick benefit did not know claimant had sustained an accidental injury resulting in disability. The evidence of the witness Ziegler is likewise sufficient to establish that his department had never been advised of any disability resulting from an accidental injury arising out of and in the course of claimant's employment. However, the record discloses sufficient evidence which, if believed, reasonably tends to support the finding that petitioner knew claimant had sustained an accidental injury on February 20, 1940, for the reason that it was reported to the superintendent of petitioner, John Stoker.

We do not deem it necessary to set forth in detail such evidence. It may be noted, however, that the Industrial Commission has twice found that respondent herein had actual notice of the accidental injury. Claimant testified that he notified John Stoker, respondent's district superintendent, the same day the accident occurred, namely, February 20, 1940. Stoker specifically denied that fact, but he admitted that he met and talked with claimant at the time and place testified to by claimant and that he discussed with claimant the condition of his foot. The commission on this conflicting evidence found that respondent did have actual notice of the accidental injury, and that finding of fact is binding upon this court. Stoker was district superintendent and if notice to him of the accidental injury was notice to the company, it was likewise notice to the company that it would be liable for compensation under the Workmen's Compensation Law if the disability caused by the injury continued beyond the statutory five days' waiting period. The fact, if it is a fact, that Stoker failed to notify subordinate departments of the company whose duty it was to carry out the details in making compensation payments, that the cause of claimant's absence from his work was an accidental injury, did not relieve the company of its duty to make payments of compensation or remuneration in lieu of compensation. These subordinates, whose duties were purely ministerial, in computing the amounts of the payments and preparing the checks to be delivered to claimant and the receipts for claimant to sign, may have been justified in calling the payments "gratuitous allowances" or "sick leave payments," but that did not alter the fact that respondent was actually liable for compensation under the Workmen's Compensation Law.

It may also be noted that all, or nearly all, of the payments made to claimant fell short of the amount which was actually due him under respondent's so-called plan for disability and gratuity payments to employees who were off duty because of illness, etc.

The record shows that claimant's daily wage was $5.52; that he had been with the company for more than 15

years. The so-called plan provided for absentee payments to employees who had from 10 to 15 years service at seven days full time and more than seven days half time. Claimant's absence commenced February 21, 1940. Under the plan he was entitled to pay for seven days at $5.52 per diem, which would amount to $38.64. The first payment was made April 12, 1940, and, according to the receipts, was paid from March 1, 1940, to March 30, 1940, and was for $71.76. That allowed him nothing for the first seven days, that is, from February 21 to February 27, inclusive, at $5.52 per day. It allowed him nothing for the two remaining days in February, that is, February 28, and February 29, 1940, at half pay, or $2.76 per day. If payment had been made strictly in accordance with the plan, claimant should have received for the first seven days, at $5.52 a day, $38.64 and 32 days at $2.76 per day or $88.32, making a total of $126.96.

There was evidence to the effect that deductions were made for claimant's group insurance premiums, which was 60¢ per month, and also deductions were made for Social Security tax and union dues. Altogether, these could hardly have amounted to more than $6. Deducting $6 claimant was still entitled to $120.96. What he actually received was $71.76 and that was approximately four weeks' compensation at $18 per week.

The next payment covered the period April 1 to April 30, 1940, and was for $68.44. Under the plan, it should have been 30 days at $2.76 per day of $82.80, less a deduction of $6, or $76.80.

Claimant was underpaid $13.80 for the month of May. For June he was underpaid $13.80. For July he was underpaid $17.12, and for August he was underpaid $20.43. But each payment was approximately the amount he would have received under the Workmen's Compensation Law.

The commission found:

"That claimant's claim is not barred by the Statute of Limitations for the reason that within one year prior to the time claimant's claim was filed, he was paid compensation for the temporary disability resulting from the accidental personal injury sustained by him on February 20, 1940, and that such payments were made by respondent as compensation payments, the respondent having knowledge at the time such payments were made of claimant's injury and subsequent disability caused thereby, and it being the intent at the time such payments were made to claimant to compensate him for such temporary disability, which intent was proven by representations made to claimant and to his agent at the time various payments were made to him by agents of the respondent."

It appears that when the checks were made out and the receipts prepared in advance, the company selected one of its employees to deliver each of the checks. Two of the checks were delivered by Mr. Stoker, the district superintendent. There is evidence that he told claimant, or claimant's wife, that the checks were for compensation. The same is true as to the other employees who delivered the checks. That statement they denied, but the commission, in effect, found that such statements were made by the agents of the company. There is ample evidence to support the finding of the commission.

We are of the opinion, and hold, that the record contains sufficient evidence to support the finding that the payments, although made as sick benefits, were made with the knowledge of the petitioner that claimant had sustained an accidental injury resulting in a disability and the payments were made in lieu of compensation. Since it is admitted that if the payments were made in lieu of compensation the statute was tolled, the claim was filed within time.

In the second proposition it is argued that the finding as to temporary disability is not sustained. The evidence discloses, without substantial conflict, that the period for the payment of tem-

porary disability covered only the healing period.

In Mead & Phillips Drilling Co. et al. v. Rush et al., 158 Okla. 265, 13 P. 2d 78, it was held:

"The question of when temporary total disability and permanent partial disability exist so as to justify successive awards under the Workmen's Compensation Act, and when the one ends and the other sets in, are questions of fact for the determination of the State Industrial Commission from the evidence."

And:

"Temporary total disability means the healing time, or that period of time that claimant, or the employee, by reason of the injury, is unable to perform any kind of labor and is totally disabled—that class of disability from which you could reasonably expect a recovery."

Claimant's injury occurred February 20, 1940. His left leg was amputated below the knee June 8, 1940. The commission found that temporary total disability continued until August 10, 1941, which period of time, less the five days' waiting period, was 75 weeks and five days. Respondent contends that compensation for temporary total disability could only be allowed to June 8, 1940, the date of the amputation, at which time payment on the 150 weeks' allowance for the loss of the foot should commence.

In Dunning Construction Co. et al. v. King et al., 170 Okla. 129, 39 P. 2d 67, it was held:

"The question of when temporary total disability ceases and when permanent total disability, permanent partial disability, or temporary partial disability, or any of them, may succeed, so as to justify successive awards under the Workmen's Compensation Law, are questions of fact for the determination of the State Industrial Commission."

There is ample evidence to support the finding that temporary total disability continued until August 10, 1941,

In fact, there is medical testimony, including one physician called by respondent, to the effect that claimant is permanently totally disabled.

Award sustained.

DAVISON, C.J., and WELCH, CORN, and JOHNSON, JJ., concur. ARNOLD, V.C.J., and GIBSON and HALLEY, JJ., dissent.

Rehearing Denied Nov. 8, 1949.