Max E. McBRIDE, Petitioner,

v.

The B. F. GOODRICH COMPANY and The State Industrial Commission, Respondents.

No. 37754.

Supreme Court of Oklahoma.

Nov. 5, 1957.

H. G. E. Beauchamp, Miami, for petitioner.

A. C. Wallace, John R. Wallace, Ben T. Owens, Miami, Mac Q. Williamson, Atty. Gen., for respondents.

CORN, Vice Chief Justice.

On September 1, 1955, Max E. McBride, petitioner herein, filed a claim for compensation against B. F. Goodrich Company, respondent herein, and Special Indemnity Fund in which he states that on October 23, 1953, while in the employ of respondent he sustained an accidental injury consisting of an injury to his left shoulder; that the injury occurred when a stock car struck his shoulder causing injury to the shoulder

and other members of his body resulting in some permanent disability to his person; that he was furnished medical treatment for such injury by respondent and such treatment was continuous up to and including October 31, 1954, when medical treatment ceased. He further states that at the time he sustained his injury he was a physically impaired person as a result of a prior injury sustained by him while in the employ of Eagle-Picher Mining Company consisting of an injury to his right thumb; that the injury occurred in the State of Kansas and that the Kansas Industrial Commission awarded him compensation for such injury in the sum of $350 on the basis of 15 per cent permanent partial disability to the thumb.

Respondent's answer consisted of a general denial and an affirmative plea of the statute of limitations. Special Indemnity Fund filed no answer in the proceeding.

The trial judge at the close of the evidence found:

"That the claimant herein alleges to have sustained an accidental injury, arising out of and in the course of his hazardous employment, on October 23, 1953, consisting of an injury to his left elbow.

"That claimant did not file his claim for compensation until September 1, 1955, which was long after the Statute of Limitations had run.

"That the respondent did not furnish medical treatment nor pay compensation nor furnish or make other payments in lieu of compensation, as contemplated by the Workmen's Compensation Law, [85 O.S.1951 § 1 et seq.] wherefore claimant's claim for compensation is denied by reason of such running of the Statute of Limitations."

The trial judge, under such findings, entered an order denying compensation which was sustained on appeal to the Commission en banc.

Petitioner brings the case here to review this order and contends that the finding of the Commission and the order based thereon denying compensation is not supported by the evidence and is contrary to law.

Petitioner contends the evidence discloses that respondent paid him remuneration in lieu of wages which tolled the statute and also furnished him medical treatment for such injury; that such treatment was continuously furnished him from the time he sustained his injury up to and including October 31, 1954; that he filed his claim within one year thereafter, and the claim was therefore filed in time.

Petitioner testified that he sustained an accidental injury while in the employ of respondent on the day, and in the manner stated in his claim; that he immediately thereafter informed the foreman of such injury and was told by the foreman to go to the dispensary, maintained by the respondent in its plant, for treatment; that he went to the dispensary and received temporary treatment to his shoulder. He then returned to work and worked until July 2, 1954, since which time he has been unable to do any work because of pain in his shoulder. He then again informed respondent's foreman relative to his condition. The foreman told him to go to the doctor for further treatment, and continue treatments as long as necessary.

He then returned to the dispensary for further treatment. The nurse in charge told him to go to Dr. G. for examination. He consulted, and was examined by Dr. G. The doctor gave him some medicine, diathermy and heat treatments and kept him in the hospital for five days, at which time he was released from the hospital but still remained under the doctor's care. He saw the doctor several times thereafter, and the doctor advised him to go to a doctor in Oklahoma City for further treatment. He went to that doctor and received some treatment and thereafter consulted various other doctors and was treated by them; that such treatment continued until October 31, 1954, since which time he has received no further treatment, and that he is still unable to do ordinary manual labor.

The record discloses that respondent carried no compensation insurance for employees, it was an own risk carrier. It, however, obtained and carried, at its own expense, a sick and accident policy with the Aetna Life Insurance Company for its employees. The policy provided for sick benefits and for disability due to injuries not occurring at the plant. Petitioner received a copy of this policy, read and knew its contents and testified as to some of the provisions contained in the policy. He testified that he knew the policy did not cover plant injuries. In this respect he testified:

"Q. All, right, sir; now, then, Mr. McBride, the B. F. Goodrich Company maintains certain group insurance arrangements at the plant for the employees to cover medical expense for disability benefits and illnesses that are not the result of some plant-incurred injury; isn't that correct? A. Yes, sir.

"Q. And that is carried through the Aetna Life Insurance Company? A. Yes, sir.

"Q. And if an employee becomes sick or disabled as a result of some illness or injury not connected with his work at the plant, he may apply for certain medical and disability benefits under that policy; isn't that right? A. Yes, sir."

On July 29, 1954, petitioner filed application with the Aetna Life Insurance Company for sick benefits under the provisions of the policy.

Respondent was supplied by Aetna Life Insurance Company with numerous blank forms for the use of respondent's employees who might be entitled to sick and non-plant accident benefits in making application therefor.

Petitioner appeared at the office and requested a blank form with which to make application for sick benefits. He filled in the blanks himself and following the questions appearing in the application "give cause of disability (if due to accident state when, where and how the accident oc-

curred)," petitioner answered "sickness". That neither his employer or insurance-carrier requested him or induced him to make the application for sick benefits under the Aetna policy.

Petitioner further testified that he received payment for such sick benefits as were payable under the policy directly from the Aetna Life Insurance Company. These are the payments petitioner contends constitute payment of wages or remuneration in lieu of wages. This contention cannot be sustained. The payments were not made by respondent but were made direct to petitioner by the Aetna Life Insurance Company and were made on application of petitioner for such payments in which application he, in effect, disclaimed any disability due to accidental injury.

Petitioner further contends that the medical treatment furnished him by respondent tolled the statute; that he filed his claim within one year after the last date on which medical treatment was furnished him, and the claim was therefore filed in time.

The evidence shows that most of the doctor and hospital bills were paid by the Aetna Life Insurance Company as it was required to do under the terms of its policy. Coverage of the policy, however, was not sufficient to include payment of all of the doctor bills. Some of the doctor bills were not paid by it and Mr. Wilson, local superintendent of respondent, testified that he paid none of the bills and some of the bills still remain unpaid.

Petitioner, prior to the time he made his application, went to the clinic at Miami, Oklahoma, for examination by Dr. G. Dr. G. examined him on July 3, 1954, and in the written report admitted in evidence, states petitioner came to him at the clinic at Miami, on the 3rd day of July, 1954, for diagnosis. He obtained a case history from petitioner, made an examination, including x-ray examination of the shoulder. The x-ray of the shoulder showed negative, and after stating in detail conditions found to exist, the doctor concluded that peti-

tioner's present condition could easily be due to focus of infection or general disease, and was not necessarily, nor likely due to his injury of October 1953, and testified he so advised petitioner. It will be noted that this examination was made on July 3, 1954; petitioner did not file his application for sick benefits under the Aetna policy until July 29, 1954. It thus appears that he had the advice of his doctor before him at the time he made the application and apparently in view of such advice stated in his application that it was made for sick benefits and in which he, in effect, disclaimed any disability due to accidental injury.

There is nothing in the record tending to indicate that petitioner, at the time he made his application for sick benefits under the Aetna policy, or during all the time medical treatment was furnished, contemplated filing a claim for compensation under the Workmen's Compensation Act, or that respondents were conscious or aware of the fact that petitioner intended to do so.

■ It will thus be seen from the evidence that such medical treatment as was furnished petitioner was furnished to treat a disability due to general sickness rather than to accidental injury, and did not therefore toll the statute. In Sinclair Prairie Oil Company v. Stevens, 194 Okl. 109, 148 P.2d 176, 181, we said:

"Payments made by an employer to an employee do not excuse delay in filing a claim for compensation before the State Industrial Commission, unless such payments were compensation for disability due to accidental personal injury or remuneration in lieu of such compensation."

In that case we further said:

"Apparently, however, the claimant also entertained the view, which met with the approval of the State Industrial Commission, that if the payments were made for 'temporary disability' which was later determined to have been due to accidental personal injury, such payments constituted 'compensa-

tion' even though the company at the time the payments were made actually believed and was justified in believing in good faith that claimant's disability had no connection with any accidental injury and that it was paying purely 'sick benefits' for which there was no possibility that a claim might arise under the Workmen's Compensation Act.

"This view is untenable, yet it appears to have been the theory upon which the State Industrial Commission decided the issue. * * *

"The finding of the commission in this case was such as to impel a conclusion that the point was decided upon the theory that the company's payments of temporary disability benefits excused delay in filing the claim even though the company was not aware or should not have been aware of the accidental injury at the time the payments were made and believed it was paying purely 'sick benefits.'"

The principle there announced applies to medical treatment. In Williams v. Central Dairy Products Co., 205 Okl. 266, 236 P.2d 984, 985 this court said:

"* * * Medical treatment allowed by statute is merely an allowance in the nature of compensation in addition to scheduled compensation."

Four other physicians testified in the case. They all agreed that at the time of their various examinations petitioner was suffering from a disease known as rheumatoid arthritis. They disagreed however as to the cause of such disease. Two of these physicians testified that in their opinion the blow received on the elbow by petitioner aggravated and brought to life a dormant arthritic condition which caused a disability to exist which did not exist before.

The other two physicians testified that in their opinion petitioner's disease was not caused or brought about by the blow received by him to his left elbow in October 1953, but was due to other causes.

■ Petitioner in his brief asserts that respondent, by its acts and conduct, lulled petitioner to a sense of security which prevented him from filing his claim for compensation within the statutory time and that by such acts and conduct it waived the statute. We find no evidence in the record to support such contention. Petitioner in his brief does not point out or refer to any specific evidence tending to sustain such contention, nor do we find any evidence in the record to support the conclusion that respondent, by its acts and conduct, has waived the statute.

We conclude that the evidence is sufficient to sustain the findings of the commission, and the order based thereon denying compensation. The order will therefore not be disturbed on review.

Order sustained.

WELCH, C. J., and HALLEY, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.