## McKEEVER DRILLING CO. et al. v. EGBERT et al.

No. 25379.  Dec. 27, 1934.

Rehearing Denied Jan. 22, 1935.

Pierce, Follens & Rucker, for petitioners.

Wm. J. B. Myers and Robert D. Crowe, for respondents.

BAYLESS, J. Maryland Casualty Company, the insurance carrier, and McKeever Drilling Company, the employer, hereinafter referred to collectively as petitioners, bring this original proceeding to review an award of the State Industrial Commission in favor of B. M. Egbert, an employee, who is now incompetent, and by reason thereof is represented by Mrs. Jessie Egbert, his legal guardian, hereinafter called claimant.

These parties were before this court in case No. 23480, McKeever Drilling Co. et al. v. Egbert et al., involving a review of a previous award, which award was vacated, and the proceedings remanded to the State Industrial Commission for further hearing upon another phase. See our opinion in 167 Okla. 149, 28 P. (2d) 579.

The first assignment of error argued by petitioners is:

"The finding that the claimant became overheated and fell, striking his head against the engine, does not establish that the accident **arose out** of the employment, but, on the contrary, in view of the prior decision of this court in this cause, to the effect that the overheating or sunstroke involved in this case does not **arise out** of the employment, its result, the fall, does not **arise out** of the employment."

The previous award was granted upon the finding of the Commission that the employee suffered an accidental personal injury, arising out of and in the course of the employment, in the nature of a heat stroke or sunstroke. We vacated this award upon the ground that the finding upon which the award was based was not supported by facts sufficient to bring it within the rule announced as applying to heat stroke or sunstroke cases. See our former opinion. But because it was clear from the record that the employee also fell and struck his head against an engine and inflicted upon his head a wound, to which some of the medical expert witnesses referred, we recommended further hearings to determine whether employee's condition and present disability could be attributed to that cause.

The effect of the argument made by petitioners is this: If the heat stroke did not arise out of the employment, then, if the record now shows that employee suffered from overheating (without the meaning of the Compensation Act) and as a result fell, that this could not be said to arise out of the employment. In other words, petitioners argue that the heat stroke was the first step

in the line of causation and the fall resulted from an incident not associated with the employment. They cite authorities in support of this contention, including a case decided by this court (Marion Machine Foundry & Supply Co. v. Redd, 115 Okla. 30, 241 P. 175), wherein it was held that an employee who was injured as the result of a fall caused by an attack of epilepsy did not receive an injury arising out of the employment.

This rule has its exceptions, and in the case of Marion, etc., Co. v. Redd, supra, we noticed authorities which qualified this rule, under proper circumstances; such a circumstance as is presented where the employee, for some reason not arising out of the employment, falls, but in connection with the fall receives an injury which he would not have received but for a situation peculiar to the employment. Perhaps the earliest case in which an award was made for injuries received from a fall, induced by the idiopathic condition of the employee, is that of Wicks v. Dowell (1905) 2 K. B. 225.

In that case the employee was required, to perform his duties, to stand upon a stage or scaffold above the open hatchway of a vessel, and to direct his attention into the hold of the ship. He was seized with an attack of epilepsy and fell from the scaffold through the open hatchway into the hold of the vessel and was killed. In allowing recovery the court said:

"A man is picked up at the bottom of the hold of a ship suffering from injuries. What is the cause of his condition? The proximate cause obviously is that he has fallen from a height. But it is suggested then, if the occurrence is analyzed, it will be seen that the accident was caused by the idiopathic disease from which the man was suffering, and that therefore the accident did not arise out of his employment. At that point the authorities come in, to the effect that, although the cause of the fall was a fit, the cause of the injuries was the fall itself, and they are direct authorities that the injury in the present case was caused by an accident.

"Then did the accident arise out of the man's employment? When we get rid of the confusion caused by the fact that the fall was originally caused by the fit and confusion involved in not dissociating the injury and its actual physical cause from the more remote cause—that is to say, from the fit—the difficulty arising from the words 'out of the employment' is removed. How does it come about in the present case that the accident arose out of the employment? Because by the conditions of his employment

the workman was bound to stand on the edge of what I may style a precipice, and if in that position he was seized with a fit he would almost necessarily fall over. If that is so, the accident was caused by his necessary proximity to the precipice, for the fall was brought about by the necessity for his standing in that position. Upon the authorities, I think the case is clear; and accident does not cease to be such because its remote cause was the idiopathic condition of the injured man; we must dissociate that idiopathic condition from the other facts and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by the conditions of that employment."

In our opinion, under the facts in this case, the hazard of receiving an injury such as is claimed herein is peculiarly incident to the presence of the engine in close proximity to employee and his duties. He was where he was required to be and was doing the work he was ordered to do, and doing it in a manner satisfactory to his immediate superior; and by probably the only method by which it could be performed. If he had fallen backwards, or in any other direction save the one in which he did fall, he, perhaps, would have fallen upon the bare floor of the building (assuming it was large enough to fall in and that it was bare of other machinery than the engine), or upon the earth outside the building, neither of which would have presented a condition or hazard peculiar to claimant or to his situation in relation to his employment. Persons seized with epilepsy, vertigo, sunstroke, or other sudden and overpowering attacks usually fall where they are, and it is the presence of machinery, or height, or some other condition peculiar to the employment which increases the hazard of injury, but for the presence of which condition peculiar to the employment the person so seized would suffer no greater hazard of additional injury than one not so situated. The hazard of an injury from falling against the engine was one incident to the proximity of the engine to claimant's work, and the injury actually received arose out of the employment. Workmen's Compensation Law, Schneider (2d Ed.) vol. 1, sec. 327, pp. 1099-1102, and supplement thereto under same heading and section number; and cases cited thereunder.

The second assignment of error reads:

"The evidence does not justify the conclusion that the claimant's condition is due to striking his head on the engine and not due to the sunstroke."

We will not discuss this proposition separately, for what we have to say in response to a part of petitioner's third assignment of error fully covers this one.

The third assignment of error reads:

"That proceedings whereby property of your petitioners is sought to be taken away from them and given to another in the arbitrary and capricious manner as is disclosed in this cause constitutes a denial of those substantial rights guaranteed by the Constitution of this state and of the United States to their citizens."

This assignment is argued under two divisions, and we will direct our first consideration to the following proposition: If the State Industrial Commission is not a court (see Adams v. Iten Biscuit Co., 63 Okla. 52, 162 P. 938), holding it is merely an "administrative Commission"; Scruggs Bros. & Bill Garage v. Ind. Com., 94 Okla. 187, 221 P. 470, holding it is in the nature of a "board of arbitration"; and Union Indemnity Co. v. Saling, 166 Okla. 133, 26 P. (2d) 217, holding that it is "an administrative body exercising quasi judicial powers"), to hold that its finding of the existence of the essential or fundamental or jurisdictional facts which must exist in order to authorize it to proceed with the administration of the relief provided by the Workmen's Compensation Act, is conclusive upon this court in review, if supported by reasonable evidence, is to deprive petitioners of their property without due process of law. In other words, petitioners contend that they should not part with their property by paying it to claimant without first being condemned so to do by judicial process—in this case, the judgment of a competent court upon its own independent determination of the fact of petitioners' legal liability. To state the proposition another way, petitioners contend that the Industrial Commission is not a court, and while, as a part of the administration of the relief it can afford, it can determine from its investigation of the facts that all of the facts exist which enable it to entertain, determine, and award legal liability, nevertheless, that its determination of this legal liability is less than due process of law, in so far as the jurisdictional facts are concerned.

Petitioners assert that the Industrial Commission has no power to determine legal liability in this case (as an administrative process) unless the alleged injury "arose out of the employment"; that this is a jurisdictional fact (Rorabaugh-Brown Co. v. Mathews, 162 Okla. 283, 20 P. [2d] 141, and I. T. I. O. Co. v. Gore, 152 Okla. 269, 4 P. [2d] 690); and that it is the duty of this court (in order to afford them due process of law) to weigh the evidence upon this point and

make an independent determination of fact (Crowell v. Benson, 285 U. S. 22, 76 L. Ed. 598).

The case of Crowell v. Benson, supra, involved an analogous question, which arose under the Longshoremen's and Harbor Worker's Compensation Act (Act of March 4, 1927, chap. 509, U. S. C., title 33, sections 901-950). Under the act the administrative body was vested with authority to award compensation for injuries when (1) the relation of master and servant existed, and (2) when the injury was received upon the navigable waters of the United States. An award to an injured alleged employee was enjoined by the United States District Court upon its independent investigation of the facts and determination that the relation of master and servant did not exist. Upon review by the Supreme Court of the United States on writ of certiorari, the question of the finality of the administrative body's finding of fact that the relation of master and servant existed, if supported by some reasonable evidence, was the sole question considered. The Supreme Court of the United States said that certain facts to be found by the administrative body were essential to its right to proceed to determine the claimant's right to relief, and that certain facts to be found by the administrative body were only necessary in the routine of administering the relief. In discussing those facts said to be essential to the right of the administrative body to proceed with the matter, it said:

"A different question is presented where the determinations of fact are fundamental or 'jurisdictional' in the sense that their existence is a condition precedent to the operation of the statutory scheme. These fundamental requirements are that the injury occurs upon the navigable waters of the United States and that the relation of master and servant exists. These conditions are indispensable to the application of the statute. * * *

"In the present instance, the Congress has imposed liability without fault only where the relation of master and servant exists in maritime employment and, while we hold that the Congress could do this, the fact of that relation is the pivot of the statute, and in the absence of any other justification, underlies the constitutionality of this enactment. If the person injured was not an employee of the person sought to be held, or if the injury did not occur upon the navigable waters of the United States, there is no ground for an assertion that the person against whom the proceeding was directed could constitutionally be subjected, in the absence of fault, upon his part, to the liability which the statute creates.

"In relation to these basic facts, the question is not the ordinary one as to the propriety of provision for administrative determinations. Nor have we simply the question of due process in relation to notice and hearing. It is rather a question of the appropriate maintenance of the federal judicial power in requiring the observance of constitutional restrictions. It is the question whether the Congress may substitute for constitutional courts, in which the judicial power of the United States is vested, an administrative agency—in this instance a single deputy commissioner—for the final determination of the existence of the facts upon which the enforcement of the constitutional rights of the citizen depend. The recognition of the utility and convenience of administrative agencies for the investigation and finding of facts within their proper province, and the support of their authorized action, does not require the conclusion that there is no limitation of their use, and that the Congress could completely oust the courts of all determinations of fact by vesting the authority to make them with finality in its own instrumentalities or in the executive department. That would be to sap the judicial power as it exists under the federal Constitution, and to establish a government of a bureaucratic character alien to our system, wherever fundamental rights depend, as not infrequently they do depend, upon the facts, and finality as to facts becomes in effect finality in law. * * *

"And where administrative bodies have been appropriately created to meet the exigencies of certain classes of cases and their action is of a judicial character, the question of the conclusiveness of their administrative findings of fact generally arises where the facts are clearly not jurisdictional and the scope of review as to such facts has been determined by the applicable legislation. None of the decisions of this sort touch the question which is presented where the facts involved are jurisdictional. * * *"

Due process of law, under our state Constitution (art. 2, sec. 7), leaving out of consideration procedure, is the same thing as due process of law under the federal Constitution; it is the law of the land. Where a citizen complains that he has been, or is about to be, deprived of his property without due process of law within the meaning of both Constitutions, leaving out of consideration procedure, he uses the same rule of measurement under either system. In this respect the two Constitutions are so completely analogous that it would avail little to hold that petitioners had had due process of law under our Constitution, for their same plea would be available to them in the fed-

eral courts in relation to the rights reserved to them under the federal Constitution. What we are saying here is in support of the complete analogy and authority of the case of Crowell v. Benson, supra, to this case.

We have upheld the constitutionality of the Workmen's Compensation Act of this state in so far as it relates to the power of our Legislature to establish administrative boards or bodies to assist in the determination and administration of purely judicial rights; but, to go further and to hold that the determination of such boards upon the existence of the very facts essential to their power to act is final and binding upon us, if supported by some reasonable evidence, is to abdicate the powers and position given us under our Constitution. In addition to this, it would also be a denial to petitioners of their right to have a judicial determination, in the sense of due process of law, of their legal liability to claimant under both Constitutions.

However, it is not essential that we hear evidence ourselves, or take additional evidence in this court upon review. We may make our independent determination of fact upon the evidence submitted to the State Industrial Commission, or, if we deem this insufficient, may remand the matter to that body for the taking of further evidence upon the fact under consideration.

Having arrived at this conclusion, we must proceed to determine, as a matter of fact, whether the alleged injury to the claimant was suffered as the result of heat stroke (held to be without the employment) or was suffered as the result of striking his head against the engine—that is, trauma. The evidence submitted to us in the record made before the State Industrial Commission is ample upon this point. The facts concerning the incident are not in dispute. The only question of fact is, whether the present disability resulted from being overheated, or from striking claimant's head against the engine. It is a medical question as to whether the present disability resulted from an injury to the medulla from overheat, or from trauma.

Eight expert medical witnesses testified. All of them save one had examined and observed claimant. All of them (one arriving at diagnosis from the facts stated in a hypothetical question) diagnosed claimant's condition to be progressive bulbar palsy or paralysis. All of them agreed that medical science did not know definitely the cause or causes. All of them agreed that medical science was of the opinion that some things might cause it, including heat stroke or trauma. The one expert who testified by answering the hypothetical question was of the opinion that neither of these caused claimant's condition, but that his condition was the result of "hereditary change developed after the fortieth year and the fifth decade, and causes which are congenital and inherent in the arteries themselves." One of the expert witnesses would not attempt to say whether it was heat stroke or trauma that produced claimant's condition, although he was of the opinion that it could have been one or the other. Two of the expert witnesses were of the opinion that heat stroke caused the condition, giving as their reason therefor the fact that the nerve center affected was so deeply seated, relatively speaking, and so minute, and so closely situated to other nerve centers, that a trauma sufficiently severe to affect this particular nerve center must almost inevitably affect those surrounding, and more than likely produce death within a very short time. Four of these expert witnesses, who probably saw claimant a greater number of times than the others, and who probably examined him oftener and in greater detail, were of the opinion that claimant's condition resulted from the trauma and not from the heat stroke. Each of them supported his opinion, and incidentally the opinions of those agreeing with his aetiology, with explanations which to us as laymen are fully as plausible and scientifically correct as those opposed to them. Therefore, it is our opinion that the weight of the evidence lies with claimant's contention that his disability resulted from progressive bulbar palsy or paralysis, which in turn was caused by the trauma—the blow to the head. We, therefore, arrive at the same finding of fact that the Commission did, and must hold, as a matter of law, based upon our independent determination of fact, that the injury complained of "arose out of the employment" as the result of trauma.

What we have just said necessarily disposes of the second assignment of error heretofore stated.

We now take up the consideration of the second division of the third assignment of error. In this argument it is charged, in effect, that the State Industrial Commission made its findings of fact without knowing the evidence, or hearing it. The hearings were had at Tulsa, on January 19th and 25th, before a regularly designated employee of the Commission. The charge is then made that the award of the Commission was made

before the evidence taken at these hearings was transcribed, and therefore the Commission could not have known what was in the record of technical, scientific evidence when it made the award.

However, there is nothing authoritative in the record to establish this charge. The award of the Commission states that it considered this evidence. We are asked to conduct an investigation of the charge, and to take evidence as to whether the Commission considered this evidence. There are ways and means of incorporating into a record evidence of alleged irregularities and alleged improprieties of administrative boards, and petitioners should have availed themselves of these. We will not undertake independent investigations of such charges in the absence of some record sufficient to challenge our attention.

Award affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, and OSBORN, JJ., concur. BUSBY and WELCH, JJ., absent.