JOHN S. WESTERVELT'S SONS, A BODY CORPORATE, PLAINTIFF-APPELLANT, v. REGENCY, INC., DEFENDANT, AND JEAN G. L. CASSEL van DOORN AND MARIJ V. CASSEL van DOORN, DEFENDANTS-RESPONDENTS, AND WILLIAM HENIG, AS TRUSTEE IN BANKRUPTCY OF REGENCY, INC., BANKRUPT, DEFENDANT-APPELLANT.

Argued November 28, 1949—Decided January 9, 1950.

See also 5 *N. J. Super.* 231, 68 *A.* 2d 755.

474

Mr. Paul T. Huckin argued the cause for the plaintiff-appellant and the appellant trustee in bankruptcy. Mr. L. Stanley Ford on the brief for the trustee in bankruptcy. Messrs. Huckin & Huckin, attorney for the plaintiff-appellant.

Mr. Maurice C. Brigadier argued the cause for the defendant-respondents. Mr. Julius Seiden on the brief. Messrs. Eichmann & Seiden, attorneys.

The opinion of the court was delivered by

HEHER. J. This cause was certified for appeal to the Appellate Division of the Superior Court on the petition of the plaintiff and the defendant Trustee in Bankruptcy of Regency, Inc.

On November 16, 1948, there was summary judgment for the defendant-appellant Trustee in Bankruptcy in the Chancery Division of the Superior Court vacating a conveyance of lands made by the bankrupt Regency, Inc., to the defendant-respondent Jean G. L. Cassel van Doorn, except as to a portion of the lands conveyed by the grantee to a *bona fide* purchaser for value without notice, as made for a past consideration "in contemplation of insolvency" to one "who was fully informed as to the condition of the company," and awarding $25,000 to the Trustee against the defendant-respondent Jean G. L. Cassel van Doorn, representing the consideration paid to van Doorn by the third party purchaser of the lands so sold by him. 1 *N. J. Super.* 466 (1948).

The suit was brought to enforce a judgment of $23,103.90 and costs recovered by the plaintiff-appellant against the now bankrupt grantor of the lands  There were two additional creditors whose claims aggregated in excess of $1,900.  A month after the commencement of the suit, the corporate judgment debtor was on its own petition adjudged a bankrupt by the Federal District Court, and Henig was elected trustee. The trustee was thereupon made a party defendant to the suit.  The judgment was awarded to the trustee "as the representative of all of the creditors" of the bankrupt.  It disallowed claims for counsel fees interposed by the plaintiff and the trustee as not within the purview of *Rule* 3 :54–7 of this Court barring counsel fees except, *inter alia,* "(d) as provided by these rules or by law with respect to any action, whether or not there is a fund in court;" and this ruling is assigned for error.  Plaintiff prayed an allowance of $5,000, and the trustee, $1,500.

The insistence is (1) that *R. S.* 2 :29–131, 132, granting a discretionary power to allow counsel fees, are still in full force and effect and are comprehended in the phrase "by law" of

subdivision (d) of *Rule* 3:54–7; and (2) that if the rule of court be deemed a bar to the award of counsel fees under *R. S.* 2:29–131, 132, it is violative of Article VI, section II, paragraph 3 of the Constitution of 1947. It is pointed out that the suit was commenced prior to the effective date of the Judicial Article of the new Constitution; and that Judge Grimshaw did not disallow counsel fees in the exercise of the asserted statutory discretion, but in obedience to what he conceived to be the peremptory command of the rule of court.

Appellant invokes Article XI, section I, paragraph 3 of the Constitution of 1947, providing, *inter alia,* that "All law, statutory and otherwise, * * * in force" at the time the Constitution or any article thereof became effective "shall remain in full force until they expire or are superseded, altered or repealed by this Constitution or otherwise;" Article XI, section I, paragraph 4, providing that "Except as otherwise provided" by the Constitution, all "actions * * * shall continue unaffected;" Article XI, section IV, paragraph 3, providing that the "jurisdiction, functions, powers and duties" of the superseded courts "shall be transferred to and divided between the new Supreme Court and the Superior Court" according as jurisdiction is vested in them by the Constitution; and Article XI, section IV, paragraph 10, providing that "all the functions, powers and duties conferred by statute, rules or otherwise upon the Chancellor, the Ordinary, and the Justices and Judges" of the courts abolished by the Constitution, "to the extent that such functions, powers and duties are not inconsistent" with the Constitution, "shall be transferred to and may be exercised by Judges of the Superior Court until otherwise provided by law or rules of the new Supreme Court. * * *." The argument is that, unless there be statutory provision otherwise, the power of the Chancellor under the old system to award counsel fees, as provided by *R. S.* 2:29–131, now resides in the Superior Court to which the cause has been transferred. It is said that there is no statutory provision *contra.* Indeed, chapters 367 and 375 of the Session Laws of 1948 (*P. L., pp.* 1500,

1540) are read as conferring upon the Superior Court in this cause all the powers in this regard possessed by the court from which the cause was transferred before the adoption of the new Constitution and the "additional powers" vested in it by the new Constitution and continuing the cited statutes in full force and effect. In a word, the contention is that *Rule* 3:54–7 did not work a repealer of *R. S.* 2:29–131. It is also urged that a rule of court should be construed "in harmony with a statute, if possible," and the phrase "by law" in subdivision (d) of the rule signifies a purpose to save the operative force of *R. S.* 2:29–131, certainly so when considered in the light of the amendment to subdivision (d) of the rule made by the Court January 21, 1949, adding this clause: "but the authority heretofore vested in the Court of Chancery for the granting of counsel fees in causes generally, is hereby superseded." Reliance is placed upon the principle that implied repealers are not favored in the law.

The rule as originally written is not ambiguous when considered as a whole. It was adopted in the exercise of the rule-making power relating to practice and procedure conferred upon the Court by Article VI, section II, paragraph 3 of the Constitution of 1947. It was plainly designed to be self-contained and exclusive. The cited amendment of the rule makes clear the purpose to supersede in this regard the powers of the old Court of Chancery, not the statutory authority lodged in the Chancery Division of the Superior Court by force of subdivision (d) of the rule as appellant would construe it. The amendment was but a clarification of the original purpose, not an amendment of that purpose. It is merely declaratory of the true meaning of the rule as it was. The construction of the phrase "by law" suggested by appellant would radically modify the provisions of subdivisions (a), (b) and (c) of the rule; and there is no good reason for supposing that this qualification of the specific antecedent provisions was in contemplation. Quite the contrary. The phrase "by law" is operative *in futuro;* it has no retrospective significance; it was not intended that the conflicting pre-

existing statutes should remain in force. The rule covers the field to the exclusion of all else.

The cited sections of the Constitution are to be read in the light of the rule-making power reserved to the Court by Article VI, section II, paragraph 3; and the provisions of those sections invoked by appellant are all subject to the exercise of that power. Indeed, Article XI, section IV, paragraph 10 of the Constitution expressly subjects the transfer of the "functions, powers and duties" conferred upon the Chancellor and Judges of the abolished courts to such modification of the subject matter as may be effected "by law or rules of the new Supreme Court." And so does chapter 375 of the Session Laws of 1948, cited *supra*. The contrary view would render abortive at the outset the rule-making provision of the Constitution. Neither the last cited statute nor chapter 367 of the Session Laws of 1948 was designed to pre-empt the field or otherwise to interfere with the Court's exercise of the reserved rule-making power on the inauguration of the new judicial system. They are essentially general measures to facilitate the transition from the old system to the new, particularly the transfer of pending causes and proceedings. They were adopted September 10, 1948, to take effect on the ensuing September 15th, when the Judicial Article of the Constitution became effective and the rules of this Court were promulgated. The Legislature has not undertaken to supersede or modify the rules of court; and we are not now confronted with that jurisdictional question.

The rule as thus read is not violative of the rule-making authority granted by the provision of the Constitution cited *supra*. By the rationale of this provision, the rules promulgated September 15, 1948, in the exercise of the power superseded the pre-existing law, statutory or otherwise. This intent is rendered certain by Article XI, section IV, paragraph 10 of the Constitution providing that the functions, powers and duties of the judges under the old judicial system, not inconsistent with the new Constitution, shall be exercised by the judges of the Superior Court "until otherwise provided by law or rules of the new Supreme Court."

In the construction of constitutional limitations, courts are enjoined, as in the case of statutes, to collect the sense and meaning of the particular clause by comparing one part with another, and by considering all the parts as a whole, and not one part as a separate and independent provision bearing no relation to the remainder. The thing sought in the exposition of a constitutional provision is the intent of the people; and, in the absence of ambiguity calling for permissible extrinsic aids, this is to be found in the instrument itself. *State v. Murzda,* 116 *N. J. L.* 219 (*E. & A.* 1936). As said by Sir Edward Coke in regard to statutes, the whole is to be examined with a view to arriving at the true intention of each part. *Co. Lit.* 381a. A clause of doubtful import in itself may be made plain by comparison with other clauses or provisions of the instrument. The true sense of one clause may be found by the words or obvious intent of another. And effect is to be given, if possible, to the whole of the instrument, and to every section and clause. One part may qualify another so as to restrict its operation otherwise than the natural construction would require if it stood alone. *Cooley's Constitutional Limitations* (*8th ed.*) 124 *et seq.*

In this view, we have no occasion to make a definitive pronouncement as to the essential quality and meaning of the phrase "subject to law" contained in the rule-making provision of Article VI, section II, paragraph 3 of the Constitution. The question is reserved for full argument in a cause in which it is directly raised.

And the fact that the cited statutes were in force when this suit was commenced does not serve to give appellants a vested right to counsel fees thereunder, for the statutory authority was purely discretionary and, moreover, the incidents of a judgment are ordinarily governed by the state of the law at the time of the entry of the judgment. The taxation of costs is essentially procedural, generally affecting the remedy only. This principle also disposes of appellants' further contention that they are entitled to counsel fees for services rendered prior to the effective date of the

Judicial Article of the Constitution of 1947. *Vide Igoe Bros. v. National Surety Co.*, 112 *N. J. L.* 243 (*E. & A.* 1934).
The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.