James D. MESSENGER,
Plaintiff–Appellee,

v.

Earla Kay MESSENGER,
Defendant–Appellant.

No. 71388.

Supreme Court of Oklahoma.

Feb. 18, 1992.

Stephen R. Kistler, Hert, Baker & Kistler, Stillwater, for defendant-appellant.

Christopher D. Szlichta, Szlichta, Ramsey & Meyers, Stillwater, for plaintiff-appellee.

OPALA, Chief Justice.

In *Clifton v. Clifton* [1] the court held that 12 O.S.Supp.1987 § 1289(F) [2] should be construed as a bar to post-decree property division readjustment sought to be rested *on an after-enacted spousal right* to reach military retirement pension income. *Clifton* teaches that the provision in subsection (F), which authorizes the reopening of divorce decrees, addresses itself *solely to support alimony modification.* The narrow issue *Clifton* left unsettled, which is presented for decision today, is whether decrees rendered before the 1987 amendment enacted by 12 O.S.Supp.1987 § 1289(F) may be reopened for adjudication of the non-military spouse's *previously untendered and unresolved support alimony claims* sought to be founded on the other spouse's military retirement income that was not legally reachable at the time of marriage dissolution.

We hold today that after-enacted legislation cannot create post-decree claims for additional spousal alimony support without running afoul of our long-settled decisional law and violating vested rights protected by the Oklahoma Constitution.

I

THE ANATOMY OF LITIGATION

The appellee, James D. Messenger [husband], and appellant, Earla Kay Messenger [wife], were married on July 19, 1963. They were divorced by an Oklahoma decree of December 16, 1981, which provides for the division of all their spousal assets. [3] The husband was ordered to pay (a) child support for the parties' two minor children and (b) support alimony in the amount of $300.00 a month for ten years, or a total of $36,000.00. When the divorce was granted the husband had spent 16 years in active military service. His military retirement rights were not mentioned in the decree's property division award.

After the divorce, the husband retired from the service and began drawing his military pension. On March 17, 1988 the wife sought to reopen the divorce decree in an effort to secure additional support alimony and a distributive share of the husband's military retirement benefits. She contended below that post-decree decisional law came to authorize the inclusion of military pensions among divisible spousal assets. [4] She argued that when Congress passed the Uniformed Services Former Spouses' Protection Act [USFSPA or Act] [5]

1. Okl., 801 P.2d 693 (1990).

2. The terms of 12 O.S.Supp.1987 § 1289(F), recodified as 43 O.S.Supp.1989 § 134(F), provide: "Pursuant to the Federal Uniformed Services Former Spouse's Protection Act (PL–252), the provisions of subsection E [*infra* note 14] of this section shall have *retrospective and prospective application* with regards to modifications for the purpose of obtaining support or payments pertaining to a division of property on divorce decrees which become final after June 26, 1981." (Emphasis added.)

3. From the scanty record before us we cannot resolve the parties' dispute over whether the decree was based (a) on an agreed settlement approved by the court or (b) on the wife's waiver of appearance and of right to plead, as well as on her consent to reaching the merits of the case without further notice to her. We hence express no opinion on this issue. *See* in this connection *Dickason v. Dickason,* Okl., 607 P.2d 674, 677 (1980).

4. The wife cited *Stokes v. Stokes,* Okl., 738 P.2d 1346 (1987), in which the court held that a military pension, like a private retirement plan, may be divisible as jointly acquired property.

5. 10 U.S.C.A. § 1408 (1983). Section 1408(c)(1) provides that effective February 1, 1983:

"A court may treat disposable, retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, *either as* property solely of the member *or* as property of the member and his spouse *in accordance with the law of the jurisdiction of such court.*" (Emphasis added.)

Congress enacted USFSPA in response to *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). *McCarty* held that armed services' retirement income was to be treated in dissolution proceedings as the military spouse's separate asset. Prior to *McCarty,* each state had applied its own law to govern divorce-related interspousal division of military

in 1983 it sanctioned retroactive modification of a divorce decree to permit an equitable distribution of military retirement pension rights. Finally, the wife urged that the provisions of 12 O.S.Supp.1987 § 1289(F) [6] were expressly accorded retroactive effect in a legislative effort to follow the dictates of USFSPA. This was done, her argument went on, because it was *Congress' intention* to facilitate state-court post-decree proceedings for reopening those pre–USFSPA decrees which denied the non-military spouse a distributive share of the military retirement pension under the then extant *McCarty* federal jurisprudential bar.[7]

The trial court agreed that 12 O.S.Supp. 1987 § 1289(F) was intended to have retrospective effect, but denied the wife's quest to modify the decree's property division and support alimony provisions. This ruling the *nisi prius* court bottomed on the principle that the husband's military pension had not vested at the date of the marital bond's dissolution and hence the asset did not qualify as jointly acquired property subject to distribution. In short,

the trial court reasoned that since the pension was not part of the marital estate when the divorce was granted, it could not be included as a spousal asset for equitable distribution in a post-decree proceeding.

The Court of Appeals, which reversed this ruling, held the husband's military pension, though not vested at the time of divorce, was nonetheless a divisible spousal asset.[8] Its opinion crafts a new rule that would allow the reopening of pre-amendment decrees for distribution of military retirement rights [9] and remands the cause for further proceedings consistent with its own pronouncement.

If the Court of Appeals' opinion in this case were indeed to become final and the cause to return to *nisi prius*, the post-decree property redistribution sanctioned by the appellate court clearly would offend our *Clifton* bar. Because the wife also might assert on remand a support alimony claim grounded on the husband's income from his military pension, she could avoid offending the teachings of *Clifton* by amending her claim below to opt instead for support alimony and relinquishing the

---

retirement benefits. USFSPA's intention was to reinstate the authority to apply the state law in effect before *McCarty*. On November 5, 1990, Congress made its intentions clear by amending USFSPA to protect pre-*McCarty* divorce decrees from being reopened. (P.L. 101–510). The amendment provides in pertinent part:
"Sec. 555. AMENDMENTS TO THE UNIFORMED SERVICES FORMER SPOUSES' PROTECTION ACT
(A) PROHIBITION OF CERTAIN RETROACTIVE COURT ORDERS.—Subsection (c)(1) of section 1408 of title 10, United States Code, is amended by adding at the end of the following new sentence: 'A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse *if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse* (A) *was issued before June 25, 1981, and* (B) *did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the mem-*

*ber as property of the member and the member's spouse or former spouse.'"* (Emphasis added.)

**6.** For the text of 12 O.S.Supp.1987 § 1289(F), *see supra* note 2.

**7.** *McCarty v. McCarty, supra* note 5.

**8.** The Court of Appeals relied upon *Carpenter v. Carpenter*, Okl., 657 P.2d 646, 651 (1983), where the court held that absent special considerations, retirement benefits earned during the marriage constitute marital property.

**9.** The Court of Appeals held that the trial court is authorized to modify post-June 26, 1981 decrees to distribute military retirement income to the extent the spouse's asset was acquired or enhanced during the marriage under the following conditions: [1] the parties were married for the requisite period of ten years as required by 10 U.S.C. § 1408(d)(2); [2] the military retirement asset was *not previously considered* when the divorce was granted either (a) as an item of jointly acquired property subject to division or (b) as income for the purpose of support alimony; [3] only "disposable retired or retainer pay" under 10 U.S.C. § 1408 is allowed to be distributed; and [4] the payments to the former spouse of the military pension benefits will terminate upon the retiree's death.

other avenue of relief.[10] We granted certiorari on the husband's petition to decide if on remand the wife could ground her amended claim to an additional support alimony award on the husband's previously unreachable pension benefits.

## II

## THE WIFE'S QUEST TO REOPEN THE DIVORCE DECREE FOR REDISTRIBUTION OF SPOUSAL ASSETS AND FOR ADDITIONAL SUPPORT ALIMONY

### A. *The Property Division Claim— The Clifton Bar*

■ In *Clifton* the court held that 12 O.S.Supp.1987 § 1289(F) could not serve as a vehicle for reopening a divorce decree to divide military retirement benefits as spousal property, where by law those benefits were not divisible at the time of dissolution.[11] The court observed that if it were to conclude § 1289(F) controlled modification of property division awards, an irreconcilable conflict would arise between that section and subsection (A).[12] The latter proscribes modification of property division arrangements.

In short, *Clifton* holds that § 1289(F)'s retroactivity provisions apply only to *support alimony* awards.[13] Its rationale is bottomed on language in subsection (F)[14] which refers the reader to subsection (E).[15] Subsection (E) authorizes retroactive modification of support obligations upon proof of changed circumstances that affect either the need for or the ability to provide support.[16] Property division awards, the court concluded, must stand inviolate except when the decree is subject to vacation in a manner authorized by statute.[17]

### B. *The Support Alimony Claim*

The wife now predicates her support alimony claim on our construction in *Clifton*. She seeks to *enlarge* her previous award by tendering for consideration the husband's military retirement pension rights, which had not been and could not be previously included for evaluation of her support alimony claim.

---

**10.** In *Seymour v. Swart,* Okl., 695 P.2d 509, 512–513 (1985), we noted that when, on a judgment's reversal a cause is remanded for a new trial, it returns to the trial court as if it had never been decided, save only for the "settled law" applicable to the case.

**11.** *Clifton v. Clifton, supra* note 1 at 697.

**12.** The terms of 12 O.S.Supp.1987 § 1289(A), recodified as 43 O.S.Supp.1989 134(A), provide:

"In any divorce decree which provides for periodic alimony payments, the court shall plainly state, at the time of entering the original decree, the dollar amount of all or a portion of each payment which is designated as support and the dollar amount of all or a portion of the payment which is a payment pertaining to a division of property. The court shall specify in the decree that the payments pertaining to a division of property shall continue until completed. *Payments pertaining to a division of property are irrevocable and not subject to subsequent modification by the court making the award.*" (Emphasis added.)

**13.** *Clifton v. Clifton, supra* note 1 at 696.

**14.** *Supra* note 2.

**15.** The terms of 12 O.S.Supp.1987 § 1289(E), recodified as 43 O.S.Supp.1989 § 134(E), are:

"Except as otherwise provided in subsection D of this section, the provisions of any divorce decree pertaining *to the payment of alimony as support may be modified upon proof of changed circumstances* relating *to the need for support or ability to support* which are substantial and continuing so as to make the terms of the decree *unreasonable to either party.* Only those installments accruing subsequent to the motion for modification may be modified." (Emphasis added.)

**16.** 12 O.S.Supp.1987 § 1289(E), *supra* note 15.

**17.** The terms of 12 O.S.1981 § 1279, recodified as 43 O.S.Supp.1989 § 122, provide:

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and *shall be a bar to any claim of either party in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party.*" (Emphasis added.)

## III

## A SUPPORT ALIMONY AWARD IS SUBJECT TO READJUDICATION *ONLY IF* THE AWARD IS VOID ON THE FACE OF THE JUDGMENT ROLL

At the time the divorce decree was rendered in 1981, the terms of the governing statute—12 O.S.1981 § 1289(B) [18]—mandated that an alimony judgment be certain as to the total amount of the imposed obligation. A post-decree attack on a monetary alimony award [19] by a party who failed to bring a direct appeal for review of that award could succeed *only if* the award was fatally flawed on the face of the judgment roll.[20] A monetary allowance is deemed facially void [21] if the total amount of the adjudged obligation is not established in a sum certain or is not in a sum capable of being made certain by reference to the terms of the decree.[22] *When an alimony award would be found void for indefiniteness of the decreed obligation, the obligor's liability was subject to readjudication.*[23]

The Messenger decree sets a specific amount of support alimony to the wife, provides the amount due each month, and declares the length of time for the required payments. No appeal was brought from the award following the marital bond's dissolution. So far as we can ascertain, the face of the judgment roll utterly fails to reveal *any* jurisdictional defect in the alimony adjudication now sought to be reopened. The judgment was valid when rendered and its efficacy cannot be impaired by after-enacted legislation.[24]

---

18. The pertinent terms of 12 O.S.1981 § 1289(B) provided:

"In any divorce decree which provides for periodic alimony payments, the court *shall plainly state,* at the time of entering the original decree, *what dollar amount of all or a portion of each such payment is designated as support....*" (Emphasis added.)

Section 1289 was amended in 1983, 1985, 1987 and recodified as 43 O.S.Supp.1989 § 134.

19. Oklahoma's law recognizes two distinct forms of alimony award: (1) an in-kind award by an *in praesenti* transfer of the obligor's property and (2) a decreed *monetary* allowance. *Bishop v. Bishop,* 194 Okl. 209, 148 P.2d 472, 475 (1944); *Frensley v. Frensley,* 177 Okl. 221, 58 P.2d 307, 312 (1936).

20. *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 893 (1985); *Scoufos v. Fuller,* Okl., 280 P.2d 720, 723 (1955); *Petty v. Roberts,* 186 Okl. 269, 98 P.2d 602, 603 (1939).

The judgment roll consists of "... the petition, the process, the return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court; ..." 12 O.S.1981 § 32.1; *Mid-Continent Pipe Line Co.v. Seminole County Excise Bd.,* 194 Okl. 40, 146 P.2d 996, 1000 (1944); *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800 (1984). *See also Matter of N.L.,* Okl., 754 P.2d 863 (1988); *Minter v. State,* Okl.Cr., 765 P.2d 803 (1988); *Reeves v. Agee,* Okl., 769 P.2d 745, 752 n. 16 (1989); *Carr v. Braswell,* Okl., 772 P.2d 915, 917 (1989); *Willard v. Kelley,* Okl., 803 P.2d 1124, 1134 (1990); *Heiman v. Atlantic Richfield Co.,* Okl., 807 P.2d 257, 260 (1991).

21. A decision is facially void if an inspection of its record proper shows that one or more of the requisite jurisdictional elements—the subject matter or *in personam* cognizance, or the power to render a particular decision—appears to have been absent. *Heiman v. Atlantic Richfield Co., supra* note 20 at 260 n. 11; *Capitol Federal Savings Bank v. Bewley,* Okl., 795 P.2d 1051, 1054 (1990); *Hough v. Hough,* Okl., 772 P.2d 920, 921 (1989); *Mayhue v. Mayhue, supra* note 20 at 893 n. 8; *Scoufos v. Fuller, supra* note 20 at 723; *State ex rel Commissioners of Land Office v. Keller,* Okl., 264 P.2d 742, 747–748 (1953).

22. *Frensley v. Frensley, supra* note 19, 58 P.2d at 312, and cases cited therein. *Oder v. Oder,* 149 Okl. 63, 299 P. 202, 203 (1931), considered an open-ended monetary award of alimony. The divorce decree in that case provided for monthly alimony payments in a sum certain to be made during an indefinite period in the future. The court held the award void because its open-ended terms violated the statutory command that the total alimony obligation imposed be in an amount that is certain.

23. *Oder v. Oder, supra* note 22, 299 P. at 203–204; *see also Finley v. Finley,* 174 Okl. 457, 50 P.2d 643, 645 (1935); *Vanderslice v. Vanderslice,* 195 Okl. 496, 159 P.2d 560 (1945); *Munsey v. Munsey,* Okl., 385 P.2d 902, 905 (1963); *Clark v. Clark,* Okl., 460 P.2d 936, 939 (1969); *May v. May,* Okl., 596 P.2d 536, 540 (1979).

24. The validity of a judgment must be measured by the law in force when judgment was rendered. After-enacted legislation cannot impair the efficacy of a validly rendered judgment. *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 594 n. 18 (1986); *Lake v. Bonynge,* 161 Cal. 120, 118 P. 535, 540 (1911); *Pacific Power Co. v. State,* 32 Cal.App. 175, 162 P. 643, 646 (1917);

## IV

### THE DECREED SUPPORT ALIMONY OBLIGATION EMBODIES VESTED RIGHTS THAT ARE CONSTITUTIONALLY PROTECTED BY ART. 5 § 54, OKL.CONST.,[25] FROM THE EFFECT OF AFTER–ENACTED LEGISLATION

■ States establish vested rights by their constitution, statutes or the common law.[26] Rights so created become absolute and, by Art. 5 § 54, Okl. Const.,[27] are constitutionally shielded from legislative invasion.[28]

■ Property interests represented by a divorce decree's support alimony award are vested rights embodied in a judgment. They are constitutionally insulated by § 54 from legislative interference by after-enacted statutes.[29] A decree's ali-

mony decision constitutes a final judicial assessment of all those assets that are then legally available, and hence properly includable, for consideration in making the spousal support award. The judicial decree that creates a monetary obligation in an interspousal suit is a *judgment* which, when final, stands on a constitutional footing absolutely equal to any money judgment at law.[30] It is a final determination of *all* the rights that necessarily accrue and absolutely vest in the parties.[31] After a marriage's dissolution, *all* interspousal rights are governed *solely* by the divorce decree unless there is a valid post-divorce agreement.[32]

■ Judgments comprise obligations of the highest nature known to law.[33] A judgment's effect and validity must be governed by the *law in force at the time of its rendition*. The legislature is constitutionally powerless to burden a judgment with

*Anderson v. Dewey,* 82 Idaho 173, 350 P.2d 734, 738 (1960); *John S. Westervelt's Sons v. Regency,* 3 N.J. 472, 70 A.2d 767, 771 (1950); *see also Washabaugh v. Bartlett Collins Glass Co.,* 177 Okl. 159, 57 P.2d 1162, 1164 (1936); *Apple v. State Insurance Fund,* Okl., 540 P.2d 545, 547 (1975); *Weber v. Armco, Inc.,* Okl., 663 P.2d 1221, 1227 (1983).

**25.** The terms of Art. 5 § 54, Okl.Const., are: "*The repeal of a statute shall not* revive a statute previously repealed by such statute, nor shall such repeal *affect any accrued right,* or penalty incurred, or proceedings begun *by virtue of such repealed statute.*" (Emphasis added.)

**26.** In *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), the Court observes that property interests *protected by due process* are not created by the federal constitution; they stem from state law as an independent source. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

**27.** *See supra* note 25 for the text of Art. 5 § 54, Okl.Const.

**28.** *Oklahoma Water Res. Bd. v. Central Okl. M.C. Dist.,* Okl., 464 P.2d 748, 755 (1969); *Smith v. Smith,* Okl., 652 P.2d 297, 299 n. 1 (1982) (Opala, J., concurring). "Rights that have become vested by judgment constitute property protected from legislative interference." *United States v. Board of Educ. of City of Chicago,* 588 F.Supp. 132, 135 (N.D.Ill.1984), citing *McCullough v. Virginia,* 172 U.S. 102, 123–124, 19 S.Ct.

134, 142, 43 L.Ed. 382 (1898). "[A] vested cause of action, whether emanating from contract or common-law principles, may constitute property beyond the power of the legislature to take away...." *de Rodulfa v. United States,* 461 F.2d 1240, 1257 n. 96 (D.C.Cir.1972), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972).

**29.** Art. 5 § 54, Okl.Const., quoted in *supra* note 25. *See also Lee v. Volkswagen of America, Inc.,* Okl., 743 P.2d 1067, 1069 (1987); *Timmons v. Royal Globe Insurance Co., supra* note 24 at 594.

**30.** *Stanfield v. Stanfield,* 67 Okl. 56, 168 P. 912, 914 (1917).

**31.** *Lee v. Volkswagen of America, Inc., supra* note 29 at 1069; *Timmons v. Royal Globe Ins. Co., supra* note 24 at 594; *Mayhue v. Mayhue, supra* note 20 at 894; *Oklahoma Water Res. Bd. v. Central Okl. M.C. Dist., supra* note 28 at 755; *see also Prudential Property and Casualty Company v. Grimes,* Okl., 725 P.2d 1246, 1250 (1986); *Finnell v. Finnell,* 113 Okl. 269, 230 P. 912, 913 (1924); *Henderson v. Arkansas,* 71 Okl. 253, 176 P. 751, 753 (1918).

**32.** *Chapman v. Chapman,* Okl., 692 P.2d 1369, 1374 (1984); *DeWeese v. Fisher,* Okl., 658 P.2d 1153, 1154 (1983); *Johnson v. Johnson,* Okl., 674 P.2d 539, 543 n. 9 (1983); *Shipp v. Shipp,* Okl., 383 P.2d 30, 33 (1963).

**33.** *Vaughn v. Osborne,* 103 Okl. 59, 229 P. 467, 470 (1924).

conditions not present in the law at the time of its rendition.[34]

The statutory regime in place when the parties' 1981 divorce was rendered authorized neither modification of support alimony upon changed conditions [35] nor reopening of settled decrees for readjudication of spousal support to be rested upon an after-created claim to a military spouse's retirement benefits.[36] If subsection (F) were to be given retrospective effect, the husband would be stripped of a fundamental law's protection afforded him by Art. 5 § 54, Okl.Const.

## V

## THE DECREE'S ADJUDICATION OF SPOUSAL SUPPORT IS ALSO PROTECTED BY ART. 2 § 7, OKL.

CONST.[37] FROM AFTER–ENACTED LEGISLATION

The rights that come to be vested in every final judgment constitute private property within the meaning of Art. 2 § 7, Okl.Const.[38] Section 7 bars the government's deprivation of property without due process of law. One of the highest functions due process performs is its protection of fundamental rights from *substantially unfair or mistaken deprivations* by the government, particularly so when the power is exercised for the benefit of *private parties*.[39] Although the state and federal due process clauses [40] are similarly, or identically, worded and have a coextensive definitional range,[41] we are free, as a matter of state law, to afford protection to state-created rights that is more extensive than that which flows from the federal constitution.[42]

" ... [N]or shall any State deprive any person of life, liberty, or property, without due process of law...."

**34.** Art. 5 § 54, Okl.Const., quoted in *supra* note 25; *Mayhue v. Mayhue, supra* note 20; *Lee v. Volkswagen of America, Inc., supra* note 29; *Timmons v. Royal Globe Insurance Company, supra* note 24; *Dickason v. Dickason, supra* note 3 at 677; *Prudential Property and Casualty Company v. Grimes, supra* note 31.

**35.** 12 O.S.Supp.1987 § 1289(E), quoted in *supra* note 15. Subsection E was added in 1983.

**36.** 12 O.S.Supp.1987 § 1289(F), quoted in *supra* note 2. Subsection F was enacted in 1987.

**37.** Art. 2 § 7, Okl.Const., provides:
"No person shall be deprived of life, liberty, or property, without due process of law."
*See Swatek v. Board of Regents of Oklahoma Colleges,* Okl., 535 P.2d 295, 298 (1975), citing *Graham v. City of Duncan,* Okl., 354 P.2d 458, 461 (1960). "A 'vested right' is the power to do certain actions or possess certain things lawfully, and is substantially *a property right." Oklahoma Water Res. Bd. v. Central Okl. M.C. Dist., supra* note 28 at 755 (emphasis added).

**38.** *See supra* note 37 for the text of Art. 2 § 7, Okl.Const.

**39.** *Reherman v. Oklahoma Water Resources Bd.,* Okl., 679 P.2d 1296, 1302 (1984); *Draper v. State,* Okl., 621 P.2d 1142, 1146 (1980); *see also Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

**40.** The 14th Amendment's Due Process Clause provides in part:

**41.** *See Fair Sch. Finance Coun. of Okla. v. State,* Okl., 746 P.2d 1135, 1148 n. 48 (1987); *McKeever Drilling Co. v. Egbert,* 170 Okl. 259, 40 P.2d 32, 35 (1935).

**42.** U.S. Supreme Court jurisprudence need not be dispositive of questions involving rights guaranteed by state constitutional provisions. States are free to interpret their own due process clauses to afford protection beyond that granted by the federal constitution, even when the state and federal constitutions are similarly or identically phrased. *See Michigan v. Long,* 463 U.S. 1032, 1037–1042, 103 S.Ct. 3469, 3474–3477, 77 L.Ed.2d 1201, 1212–1215 (1983) *Cooper v. State of California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967); *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *see also Fair Sch. Finance Coun. of Okla. v. State, supra* note 41 at 1147 n. 46; *Jackson v. Williams,* Okl., 714 P.2d 1017, 1024 n. 24 (1985); *Turner v. City of Lawton,* Okl., 733 P.2d 375, 380 (1987); *Raven v. Deukmejian,* 52 Cal.3d 336, 276 Cal.Rptr. 326, 337, 801 P.2d 1077, 1088 (1990); *People v. Disbrow,* 16 Cal.3d 101, 113, 114–115, 127 Cal.Rptr. 360, 368, 545 P.2d 272, 280 (1976); *State v. Santiago,* 53 Haw. 254, 492 P.2d 657, 664 (1971); *Holy Name Hospital v. Montroy,* 153 N.J.Super. 181, 379 A.2d 299, 301 (1977); *State v. Johnson,* 68 N.J. 349, 346 A.2d 66, 67 (1975); *People v. Isaacson,* 44 N.Y.2d 511, 406 N.Y.S.2d 714, 718, 378 N.E.2d 78, 82 (1978); *Common-*

■ The terms of 12 O.S.Supp.1987 § 1289(F), which appear to sanction modification of a decree-conferred alimony award rendered before that subsections's effective date, would operate to extinguish vested property rights protected by our fundamental law.[43] While the legislature no doubt intended to adjust a perceived past inequity inflicted on non-military spouses, all statutes—especially those that operate retroactively upon vested rights—must conform to the minimum standards of the state constitution and to the values it protects.[44] Our fundamental law's due process clause was explicitly designed to shield citizens from the efforts of well-intentioned lawmakers no less than from those suspected of less supportable motives.[45] The legislature stands powerless to abrogate rights whose existence cannot be questioned.[46]

## VI

### THE NARROW EXCEPTION CARVED OUT IN *NANTZ v. NANTZ*[47] IS INAPPLICABLE HERE

■ The constitutionally shielded concept of an "accrued" or "vested right" in an adjudicated obligation[48] was neither

eroded nor intended to be abolished in *Nantz.* There, the court held the legislature can establish a condition for terminating support alimony payments and make that after-enacted condition *apply to unaccrued portions* of awards that mature after the new law has become effective.[49] The court anchored its conclusion in the modifiable and terminable nature of support alimony. *Nantz,* which carved out but a narrow exception to the general rule that after-enacted statutes do not affect the terms or validity of a judgment, rests on the rationale that a decreed support obligation payable in installments represents a series of judgments, each one of which is governed by the law in force at the time the installment falls due.[50]

In sum, *Nantz* protects the "accrued right" to a support alimony installment *only after* it falls due.[51] Its teaching does not apply here.

### SUMMARY

Art. 5 § 54, Okl.Const., makes support alimony awards impervious and invulnerable to tinkering by after-enacted legislation. Finality of decreed spousal support stands protected by the due process guar-

wealth v. Triplett, 462 Pa. 244, 341 A.2d 62, 64 (1975). *See generally* Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489, 499 (1977); R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance and Procedure § 1.6(c) at 31–32.

43. *See Reynolds v. Brock,* 122 Okl. 110, 250 P. 999, 1001 (1926); *Swatek v. Board of Regents of Oklahoma Colleges, supra* note 37.

44. *Draper v. State,* Okl., *supra* note 39 at 1146.

45. *Reherman v. Oklahoma Water Resources Bd., supra* note 39 at 1302; *Draper v. State, supra* note 39 at 1146; *see also Fuentes v. Shevin, supra* note 39, 407 U.S. at 90, 92 S.Ct. at 1999 n. 22, quoting *Stanley v. Illinois,* 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972).

46. *Baker v. Tulsa Building & Loan Ass'n,* 179 Okl. 432, 66 P.2d 45, 49 (1937).

47. *Nantz v. Nantz,* Okl., 749 P.2d 1137 (1988).

48. *Oklahoma Water Res.Bd. v. Central Okl. M.C. Dist., supra* note 28 at 755; *Timmons v. Royal*

*Globe Insurance Co., supra* note 24 at 594; *see also* in this connection *supra* notes 24 and 34.

49. In *Nantz* the court held the terms of 12 O.S.Supp.1987 § 1289(G) free from constitutional infirmity. Section 1289(G)—enacted *after* the *Nantz* appeal was lodged, provides that the § 1289(D) "voluntary cohabitation" ground for alimony modification may be applied to modify awards rendered before subsection D's effective date.

50. In *Nantz, supra* note 47 at 1140, the court stated that "[s]ince support alimony is terminable and modifiable, then the right is not vested at the time of the decree, but only at the time each payment becomes due." The court treats *only the accrued portions* of the decreed obligation as embodying vested rights. I did not join in *Nantz* because, in my view, monetary support alimony awards—both as to accrued and unaccrued installments—constitute *vested rights* that are *constitutionally shielded from diminution* by after-enacted legislation. *Nantz v. Nantz, supra* note 47 at 1141 (Opala, J., with whom Kauger, J., joined, dissenting).

51. Art. 5 § 54, Okl.Const., quoted at *supra* note 25.

antees of Art. 2 § 7, Okl.Const. The § 1289(F) ground for modification, enacted after the rendition of the decree here in contest, is not legally available to increase the amount of the military husband's previously decreed support alimony. The *Nantz* exception—inapplicable here—is hence unavailable for invocation.

On certiorari previously granted, the opinion of the Court of Appeals is accordingly vacated and the trial court's post-decree order is affirmed.[52]

HODGES, V.C.J., and SIMMS, DOOLIN, HARGRAVE, KAUGER and SUMMERS, JJ., concur in Part II.

LAVENDER, J., concurs in Part II by reason of stare decisis.

ALMA WILSON, J, dissents from Part II.

SIMMS, HARGRAVE, KAUGER and SUMMERS, JJ., concur in Parts III, IV, V and VI.

HODGES, V.C.J., and LAVENDER, DOOLIN and ALMA WILSON, JJ., dissent from Parts III, IV, V, and VI.

DOOLIN, Justice, dissenting in part.

I dissent for the reasons stated in my dissent in *Smith v. Smith*, 652 P.2d 297, 299 (Okl.1982).

I am of the opinion that modification of support alimony awards are subject to modification on a "needs basis" since remedial legislation by the U.S. Congress[1], and the Oklahoma Legislature.[2]

ALMA WILSON, Justice, dissenting:

The linchpin of the majority opinion is the term "vested." The majority uses the term ten times within the opinion. If support alimony is not a *vested right*, the structure of the argument collapses.

In analyzing the phrase "vested right," the case of *Nantz v. Nantz*, 749 P.2d 1137,

1140 (Okla.1988), cited an earlier opinion of this Court that held a right is vested when the right of enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. *Baker v. Tulsa Building & Loan Ass'n*, 179 Okl. 432, 66 P.2d 45, 48 (1937). This Court concluded in the *Nantz* opinion that because support alimony was terminable and modifiable, the right is not vested at the time of the decree, but only at the time each payment becomes due.

That this result has long been contemplated is reflected in the case of *Stanfield v. Stanfield*, 67 Okl. 56, 168 P. 912, 914 (1917). That case holds:

Alimony decreed to a wife in a divorce is as much a debt, *until the decree is recalled or modified*, as any judgment for money is, and there is authority to the effect that the decree in favor of Mrs. Stanfield operated to cause an indebtedness to arise in her favor *as each installment of alimony fell due.*

(Emphasis added.) The majority opinion cites *Stanfield* as support for its declaration equating a judgment for support alimony to a money judgment. The paragraph quoted above clearly shows that exceptions are contemplated.

In spite of the attempt of the majority to equate orders for support alimony to money judgments, case law to the contrary exists:

[A]n order for the payment of alimony possesses different characteristics from an ordinary debt since it is designed to secure the performance of a legal duty in which the public has an interest.

*Grattan v. Tillman*, 323 P.2d 982, 984 (Okla.1957), quoting *Commons v. Bragg*, 183 Okl. 122, 80 P.2d 287, 290 (1938).

The fact that this Court has held that the public has an interest in assuring adequate support for divorced spouses, and that decrees for support alimony are only the equivalent of money judgments to the ex-

---

**52.** This court will affirm a correct judgment regardless of the trial court's reasons for its rendition. *Benham v. Keller*, Okl., 673 P.2d 152, 154 (1983); *Utica Nat. Bank and Trust v. Assoc. Prod.*, Okl., 622 P.2d 1061, 1066 (1981); *Thompson v. Inman*, Okl., 482 P.2d 927, 937 (1971).

**1.** 10 U.S.C.A. § 1408.

**2.** 12 O.S.1981, § 1289(E).

tent that an installment has become due, should make it clear that such orders in divorce decrees do not represent "vested rights" as judgments for money represent such rights.

The majority opinion attempts to confine *Nantz* to its facts when in fact, the majority opinion is overruling *Nantz*. In spite of the attempts to reconcile the two opinions, they can be neither reconciled nor distinguished. *Nantz* holds that divorce decrees containing orders for support alimony do not represent vested rights. The majority opinion in the case at bar holds to the contrary. *Nantz* holds that a party receiving support alimony can have only a settled expectation of continued support, and to be consistent, the party paying the support could have only a settled expectation of continuing to pay a certain amount. The majority opinion in the case at bar holds that the payment amount is constitutionally shielded, "impervious and invulnerable to tinkering by after-enacted legislation." A review of the dissent to *Nantz* reveals that the case at bar is simply the *Nantz* dissent revisited. If nothing else is clear, it should be clear that these two cases are incompatible and should be granted a divorce by explicitly declaring *Nantz* to be overruled.

Concerning the asserted "Clifton Bar" I have already expressed my views of that opinion in the dissent. *Clifton v. Clifton*, 801 P.2d 693, 698 (Okla.1990). The sections of the majority opinion in the case at bar addressing *Clifton* regarding property division awards, and those sections of the majority opinion addressing support alimony awards can best be summarized by stating that what the United States Congress has provided in the Uniformed Services Former Spouse's Protection Act, and what the legislature of the State of Oklahoma has enacted in 12 O.S.Supp.1987, § 1289, the Supreme Court of Oklahoma has vetoed by judicial fiat. The *Clifton* case and the majority opinion in the case at bar have effectively killed the *Nantz* case by bleeding away the legal rationale upon which *Nantz* was based. Accordingly, I respectfully dissent.